THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINALD SKINNER, Defendant-Appellant.

First District (1st Division)   Nos. 1—88—0004, 1—89—3006 cons.

Opinion filed September 30, 1991.

Randolph N. Stone, Public Defender, of Chicago (Shelton O. Green, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Ado L. Rugai, Special Assistant State's Attorney, and Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

After a bench trial, defendant Reginald Skinner was convicted of residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3) and sentenced to 7½ years' imprisonment. Subsequently, defendant filed a petition for post-conviction relief alleging ineffective assistance of counsel which the circuit court dismissed without holding an evidentiary hearing. Defendant appeals his conviction, alleging: (1) he was not proven guilty beyond a reasonable doubt; (2) the court erred in considering evidence that should have been suppressed as the fruit of an illegal arrest; (3) defendant was denied effective assistance of counsel; and (4) he is entitled to a new sentencing hearing because of prosecutorial misconduct during the hearing. Defendant separately appeals the court's dismissal of his petition for post-conviction relief, alleging that an evidentiary hearing was required where the parties' affidavits contained factual conflicts regarding counsel's effectiveness. For the reasons that follow, we reverse and remand for a new trial.

Prior to trial, defendant moved to quash his arrest and to suppress his post-arrest statements to the police. This motion was heard simultaneously with the trial on the merits. The record reflects the following evidence regarding these proceedings.

Joanna Powell testified that on August 20, 1986, she left her residence at 245 West 109th Place in Chicago for work. She departed in the early morning hours and secured the household by locking the doors and bolting the windows. Inside the residence, she had several items of personal property, including 19-inch and 13-inch televisions. Upon her return home from work that evening, she found that her home had been burglarized. She noticed an opening cut in the bath-

room floor where the heat vent was located. Upon further inspection, she realized that the basement window had been broken as glass, bars and pieces of wood from the window frame were strewn on the basement floor. Powell testified that on March 19, 1987, she identified her 19-inch television set at the police station because of identification markings she had placed upon it.

James Williams testified that on August 20, 1986, he lived next door to Joanna Powell at 249 West 109th Place in Chicago. At approximately 10 a.m. that morning, Williams saw defendant emerge from the basement window of Powell's home carrying a television set. Williams testified that defendant exited from the window back first, put the television down, then turned and began to carry the set. Williams saw defendant face to face for about 15 seconds from a distance of approximately 15 feet. Williams had an unobstructed view and had seen defendant on prior occasions since his two uncles were married to defendant's sisters.

Tia Powell, Joanna Powell's daughter, testified that on March 19, 1987, she observed a man carrying a television set attempting to sell it to a person named Christopher. She recognized the set as her mother's television. After hearing a conversation between the two, Tia Powell went home and called the police. She and the police located Christopher and thereafter went to a house at 11010 South Wentworth in Chicago. Shortly after entering the basement apartment with the police, she identified her mother's television set. Powell testified that defendant was present in the basement along with a person she knew as Haywood Burnside. She identified defendant in court as the person she had seen earlier attempting to sell the television set.

Detective John Gorman of the Chicago police department testified that he and his partner, Michael Ferguson, were assigned to Tia Powell's call for assistance. After a conversation with her, they went to the area of 110th Street and Wentworth, where they were told that defendant was in the basement. After knocking on the door, identifying himself as a police officer and explaining his purpose, defendant permitted Gorman to enter. In the apartment were two televisions; Gorman testified that defendant stated that the sets were his and that he resided in the apartment. Tia Powell then identified one of the sets as her mother's. Defendant and the television were then taken to the police station. Gorman stated that while defendant was being processed, he gave 11010 South Wentworth as his address. Later, Gorman took a photograph of defendant to Williams, the eyewitness to the burglary.

Defendant testified in his own behalf. He stated that he was employed in the building repair business and earned $600 per week. He did not know the name of the company for which he worked but stated that he worked for a man named Johnson. On March 19, 1987, he received a call from Hanna Banks of 11010 South Wentworth Avenue to fix a pipe located in the basement apartment. According to defendant, the apartment belonged to Haywood Burnside. While fixing the broken pipes, the police came to the door. Defendant stated that the police officers did not identify themselves or state their purpose nor did they produce a search warrant. Defendant allowed the police to enter after they had broken the bars to the door entrance. Once inside, defendant claimed that the police struck him in the stomach and handcuffed him to a pipe. Tia Powell then entered the basement apartment and said, "That's Haywood Burnside that they saw him climbing through the window." Defendant was arrested and taken out of the basement. Defendant denied living in the residence where he was arrested, denied telling the police that he lived there, and denied having or attempting to sell the television in question. Defendant stated that he knew James Williams through the marriage of two of his family members but that their families did not get along.

In rebuttal, the State called Detective Michael Ferguson. His testimony corroborated Detective Gorman's. The State in rebuttal submitted certified copies of defendant's conviction for three prior burglaries.

At the close of the evidence, the circuit court granted defendant's motion to quash his arrest. The court believed that, as a matter of law, defendant's "possession of [a] contraband television set, six months after the event, *** in of itself does not constitute cause to make an arrest." The State has not appealed this ruling. The court further held that Tia Powell's identification of the television set and defendant in the basement occurred prior to the arrest. Accordingly, the court refused to suppress Tia Powell's testimony on these matters. Although the record is not entirely clear, and notwithstanding the quashing of defendant's arrest, the court apparently refused to quash defendant's post-arrest statement to the police in which defendant gave his home address as the place of his arrest, reasoning that defendant "made no statement significant [which was] considered during the course of trial."

On June 14, 1989, defendant filed a petition for post-conviction relief. This petition alleged that defendant was denied effective assistance of counsel at trial and included the affidavits of his mother and stepfather, his employer, Herbert Johnson, and a copy of a police re-

port relating to the investigation of the burglary. The State filed a motion to dismiss the petition supported by the prosecutor's affidavit. The court granted the State's motion to dismiss without conducting an evidentiary hearing on the merits of the petition.

The dispositive issue on appeal relates to defendant's assertion that he was denied effective assistance of counsel. On appeal and again in his post-conviction relief petition, defendant directs this court to the following trial errors made by defense counsel: (1) counsel's failure to cross-examine James Williams on Williams' failure to inform the police until six months after the burglary, rather than on the day of the burglary when the police first spoke with him, that it was defendant whom he saw exiting from Joanna Powell's home; (2) counsel's failure to call defendant's mother and stepfather, who would testify that defendant lived with them at 203 West 110th Place on the day of his arrest, rather than at 11010 South Wentworth, the place of arrest; and (3) counsel's failure to call defendant's employer, who would corroborate that defendant worked for him on the day of the burglary.

In reviewing an ineffective assistance of counsel claim, we are mindful that our review is governed by *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and Illinois' adoption of *Strickland* in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061. These cases recognize that to succeed on such a claim, a defendant must establish that (1) counsel's performance was seriously deficient, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) In evaluating the performance factor, a defendant must also overcome the strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance and that the challenged conduct might have been nothing more than part of counsel's sound trial strategy. (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.) In the end, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 980 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.

In this case, we find that the *Strickland* tests have been met. As more fully explained, we believe that, while sound trial strategy pro-

tects counsel's decision to not call defendant's employer, counsel's failure to (1) call defendant's mother and stepfather, and (2) cross-examine Williams regarding Williams' post-theft silence constituted ineffective assistance of counsel which, when combined, created a reasonable probability that the result of the proceedings would have been different had these omissions not occurred.

In support of the error regarding the cross-examination of James Williams, defendant directs this court to the police report completed by the officers called to the burglary scene. Defendant notes that the report lists Williams' name as a witness but shows that Williams gave no information whatsoever to the police regarding the burglary. Defendant contends that it was ineffective assistance of counsel to not cross-examine Williams on his failure to identify defendant as the perpetrator of the burglary until six months after its occurrence. Defendant contends that counsel's failure to expose this information substantially prejudiced his defense because the trier of fact would seriously question Williams' credibility in light of this delay. We agree.

■ The record reflects that Williams testified that he had a clear and unobstructed view of defendant as he exited the neighboring building carrying the television set in question. On cross-examination, counsel only repeated portions of the direct examination and otherwise attempted no impeachment. We agree with defendant that counsel's failure to not attempt any impeachment using Williams' post-theft silence was ineffective assistance of counsel. See *People v. Garza* (1989), 180 Ill. App. 3d 263, 535 N.E.2d 968 (failure to impeach sole eyewitness with major discrepancies in description of assassin held to be ineffective assistance of counsel).

The State responds that counsel's decision not to impeach Williams was sound trial strategy where Williams would further testify that his post-theft silence was motivated by the fact that defendant was a family member and that the family would handle the situation. We disagree. First, it is unclear from counsel's affidavit whether this proffered trial strategy was developed before trial or whether it is a convenient post-trial excuse offered to contest defendant's charge of ineffective assistance of counsel. If it is indeed the latter, counsel's failure to fully investigate the facts makes his representation even more deficient. *Garza*, 180 Ill. App. 3d 263, 535 N.E.2d 968; *People v. Bell* (1987), 152 Ill. App. 3d 1007, 505 N.E.2d 365.

Second, the suggested rehabilitative testimony is weakened by the fact that Williams obviously had a change of heart and not only identified defendant, but testified against him in court. It is further weakened by Williams' testimony that his family did not get along with

defendant's. If indeed the families did not get along, than Williams had little motivation to protect defendant.

Third, it was for the trier of fact to decide what weight to give Williams' testimony in light of the impeachment evidence. Without the impeachment, the trier of fact heard an uncontradicted eyewitness' account of the burglary which clearly implicated defendant as the perpetrator. To not bring before the jury such fruitful impeachment evidence operated to give Williams significantly more credibility than he deserved. In our opinion, while this omission alone may not have affected the outcome of the proceedings, and thus not require reversal under *Strickland*, the combination of this error with the one we next address clearly operated to undermine the outcome of the proceedings.

■ Turning to counsel's failure to call defendant's mother and stepfather, their affidavits show that on the day of defendant's arrest, defendant resided with them at 203 West 110th Place. Defendant contends that counsel should have called these witnesses, for their testimony would both (1) contradict defendant's alleged statement to the police that he resided where arrested, and (2) corroborate defendant's testimony that he lived with them on the day of his arrest.

We believe that counsel's failure to call defendant's mother and stepfather is even more serious than counsel's failure to cross-examine Williams. Defendant testified that he did not reside where arrested. As defendant notes, the testimony of his mother and stepfather would have corroborated his testimony and contradicted the police officers' testimony that defendant told the police that he lived where arrested. As the case was presented to the jury, the jury had no corroboration of defendant's testimony. We have held the failure to call witnesses who would support an otherwise uncorroborated defense to be ineffective assistance of counsel. (See *People v. O'Banner* (1991), 215 Ill. App. 3d 778 (and cases cited therein).) We so hold again here.

We also reject counsel's argument that his decision to not call these witnesses was protected as trial strategy. Counsel argues that, because defendant's pretrial motions to quash and suppress were heard contemporaneously with the trial, he had a legitimate concern that defendant would lose his standing to assert a reasonable expectation of privacy in the place of arrest if, as these witnesses would testify, defendant did not live there. We disagree.

Initially, we note that the record is not clear whether counsel ever contacted these witnesses prior to trial. Again, if indeed these witnesses were not contacted before trial, counsel's assistance is all the

more ineffective. More importantly, counsel's theory ignores defendant's *own* testimony that he did not live where arrested. Moreover, defendant's motion to quash his arrest was predicated on the lack of probable cause; a defendant does not lose standing to assert this motion merely because he was not arrested at his home. Thus, counsel's failure to call defendant's mother and stepfather is not protected as sound trial stratagem.

As for counsel's failure to call defendant's employer, the employer's affidavit shows that counsel never contacted him prior to trial, that he was available and willing to testify, that he employed defendant as a handyman, and that defendant was sent to various apartments to perform repairs. Counsel's affidavit in response states that he contacted Johnson twice and was informed that Johnson would not testify that defendant was working for him on the day of defendant's arrest or that defendant was at a job to which Johnson had sent him.

We believe that counsel's failure to call defendant's employer is protected under *Strickland* as sound trial strategy. Although the employer's affidavit and defense counsel's affidavit conflict as to whether the employer was contacted prior to trial, the failure to contact the employer has meaning under *Strickland* only if the employer's testimony would support defendant's claimed innocence. In other words, it is sound trial strategy to not call a witness where the testimony would only hurt the defense. *People v. Lewis* (1984), 105 Ill. 2d 226, 248, 473 N.E.2d 901, 911, *cert. denied* (1985), 474 U.S. 865, 88 L. Ed. 2d 153, 106 S. Ct. 184.

Here, the employer's affidavit reveals only that defendant worked for him and that defendant was sent to various apartments to perform repairs. Significantly, the affidavit does not state that, on the day of defendant's arrest, the employer sent defendant to 11010 South Wentworth, the place of arrest. Indeed, defense counsel's affidavit states that he contacted Johnson, and Johnson would *not* testify that on the day of defendant's arrest, defendant was working for him or that he had sent defendant out on a job. Clearly, if the State were to bring this latter testimony out on cross-examination, Johnson's testimony would not only be meaningless to the defense, but would also hurt defendant's case. Accordingly, *Strickland* protects counsel's refusal to call defendant's employer.

In summary, we believe defendant was denied effective assistance of counsel. Counsel's representation fell below an objective standard of reasonableness and, but for counsel's errors, there is a

reasonable probability that the result of the proceedings would have been different. We therefore reverse and remand for a new trial.

■■ For purposes of remand, we also address whether the court erred in not granting defendant's motion to suppress his post-arrest statement to the police that his home address was the place of his arrest. During trial, Detective Gorman, in the State's case in chief, and Detective Ferguson, in rebuttal, testified that defendant told them in his post-arrest processing that 11010 South Wentworth was his residence. Defendant denied admitting this address to the police during his testimony. At the close of the evidence, although the court granted defendant's motion to quash his arrest, the court ruled that any post-arrest statement was admissible because any such statement was not indicative of defendant's guilt. Defendant contends that because this statement was the fruit of his illegal arrest, the court erred in using it as substantive evidence of his guilt. We agree.

The State offers no grounds independent of the illegal arrest to admit defendant's statement, and the record reveals no such grounds. The statement in question was given to the police during defendant's post-arrest processing. Given the time proximity between the making of the statement and the illegal arrest, the statement should have been suppressed. All evidence directly traceable to an arrest made without probable cause must be suppressed when there are no intervening events to break the connection between the illegal detention and the evidence obtained as a result. *People v. Ealy* (1986), 146 Ill. App. 3d 557, 497 N.E.2d 101, *cert. denied* (1987), 479 U.S. 1066, 93 L. Ed. 2d 1002, 107 S. Ct. 954; *People v. Hornal* (1975), 29 Ill. App. 3d 308, 330 N.E.2d 225.

We also reject the court's premise for its ruling that the statement is not indicative of defendant's guilt. While the exclusive and unexplained possession of recently stolen property is insufficient, standing alone, to prove burglary beyond a reasonable doubt, it may be used with other corroborating evidence of guilt to support a conviction. (*People v. Jones* (1985), 105 Ill. 2d 342, 358, 475 N.E.2d 832, 839; *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, *cert. denied* (1981), 454 U.S. 845, 70 L. Ed. 2d 131, 102 S. Ct. 160.) Here, defendant's post-arrest statement that he resided where arrested gives him the exclusive and unexplained possession of recently stolen property. Given that other corroborating evidence exists to connect defendant with the burglary, defendant's post-arrest statements should be suppressed. While we recognize defendant allegedly made a similar statement to the police *prior* to his arrest, defendant is never-

theless entitled to the suppression of all evidence which is the product of his illegal arrest.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for a new trial. In light of our disposition, we do not address the other arguments defendant raises in this appeal.

Reversed and remanded.

CAMPBELL and O'CONNOR, JJ., concur.