FIRST DISTRICT

April 22, 2002

No. 1-00-0175

THE PEOPLE OF THE STATE OF ILLINOIS ) Appeal from the 

 ) Circuit Court of

Plaintiff-Appellee, ) Cook County

 )

v. ) No. 99 C4 40831

 ) 

JIRANI WILLIAMS, ) The Honorable

 ) Themis Karnezis,

Defendant-Appellant. ) Judge Presiding.

JUSTICE COUSINS delivered the opinion of the court:

Jirani Williams (defendant) was convicted of attempted aggravated robbery following a bench trial and was sentenced to 10 years' imprisonment.  Upon appeal, defendant asserts that:  (1) his conviction must be reversed because the aggravated robbery statute violates due process; (2) the State did not prove beyond a reasonable doubt that he indicated verbally or by his actions that he was armed with a weapon; (3) he was denied effective assistance of counsel due to counsel's failure to impeach the State's witnesses with evidence that contradicted their trial testimony; (4) the State violated defendant's right to due process by not disclosing information that the key witness and complainant was wanted on an arrest warrant at the time of trial; (5) the mandatory sentencing provision under which he was sentenced violated his right to due process and trial by jury in that it subjects him to increased punishment without notice or a jury finding of proof beyond a reasonable doubt of the facts qualifying him as a Class X offender.

BACKGROUND

On the afternoon of June 5, 1999, Frank Robinson and his wife, Villian Robinson, were at their place of business, Robinson Towing Company.  According to Mrs. Robinson's trial testimony, defendant entered the company's office and he closed and locked the door behind him.  While sitting at a desk, Mrs. Robinson told defendant that customers were not allowed in the office and asked him to wait in the lobby.  Defendant told her that nobody was going out and nobody was coming in.  Mrs. Robinson stated that she was going to call the police, but, when she reached for the phone, defendant knocked it out of her hand.

Mr. Robinson was present during these events.  He asked defendant what he wanted.  Defendant responded that he wanted money.  That is when Mrs. Robinson noticed that defendant's hand was under his shirt.  Mr. Robinson took a roll of money from his pocket and laid it on the desk.  As Mr. Robinson pulled off some bills, defendant demanded more money.  Mr. Robinson instructed his wife to call the police.  As Mrs. Robinson proceeded to a phone on another desk, defendant pushed her into a chair and she fell against the wall.  Defendant's right hand was still under his shirt.

Mr. Robinson told defendant not to touch his wife and stepped toward his wife.  Defendant pushed Mr. Robinson.  Mrs. Robinson tried to reach for the telephone again.  Defendant then pressed Mrs. Robinson's head to the desk by holding her neck and told her that she was not going to call the police.  Mrs. Robinson stated that defendant also said, "'I just got out of jail, lady.  I'm not going back.  I'll kill somebody up in here.'"  His hand was still under his shirt.

After defendant made these statements, Mrs. Robinson heard a noise and she thought defendant had shot her.  Actually, Mr. Robinson pulled out his licensed gun from his waistband and shot defendant in the leg.  Mrs. Robinson looked and saw defendant on the floor.  Mrs. Robinson then called the police.

Mrs. Robinson recalled that defendant was wearing sweat pants and a T-shirt when he entered the office.  She stated that when she noticed that his hand was under his shirt, "that's when I got scared."  On cross-examination, Mrs. Robinson stated, "I told [Officers Anderson and Hernandez] that he came in and locked the door.  Maybe I didn't say locked.  I said closed.  I don't remember exactly verbatim."  Defense counsel asked, "Do you remember indicating to [the officers] that Mr. Williams came into your office and was acting strangely?  Do you remember not making any mention of this hand mysteriously under his shirt or anything like that?"  Mrs. Robinson responded, "I remember I just said he was acting rather nervously and by strangely that's what I meant."

Mr. Robinson testified at trial that during the entire incident, defendant's right hand was in under his shirt.  He believed that defendant had a weapon.  After Mr. Robinson shot defendant, he checked to see if defendant had a weapon, but he did not.  He testified that he told the officers at the scene that defendant came into the office and locked the door behind him.  

 At the close of the State's case, defendant moved for a  directed verdict.  That motion was denied.  

Defendant testified on his own behalf that on June 5, 1999, he was at the towing company with a friend.  As his friend was getting gas for the car that they arrived in, defendant spoke to an employee of the towing company.  Defendant testified that he asked the employee if he could use the restroom.  The employee responded, "Fuck you.  This ain't no pit stop."  This response upset defendant.  Defendant then proceeded into the company's office and saw an employee watching television.  He asked the employee if the boss was in and told him that he wanted to speak to him about a problem.  The employee answered, "He's in the back.  His office door is open."  Defendant proceeded into the office and closed the door behind him.  Defendant stated that he closed the door behind him "[f]or privacy, to talk to him about one of his workers being rude to [him]."  He said that he did not lock the door and no one told him to leave. 

Defendant testified that he started telling Mr. Robinson about the employee's rudeness.  As he spoke, he was "flying" his "arms up in the air, and everything, because [he] was upset.  Both arms in the air."  He testified that as he told Mr. Robinson about the rude employee, Mr. Robinson had his gun drawn.  Defendant then asked Mrs. Robinson to tell Mr. Robinson to put the gun away because he did not want any trouble.  As Mrs. Robinson proceeded to the telephone, defendant told her that she did not have to call the police because he did not want any trouble and he just wanted to tell them about the rude employee.  Defendant testified that Mr. Robinson then shot him in the left leg.  Defendant stated that he never had his hand under his shirt and no one asked him to leave.  Defendant testified that he never touched anyone and never demanded money.

Defendant was found guilty of attempted aggravated robbery.  At a hearing on defendant's written motions for a new trial and reconsideration, defense counsel asserted that the State "was in a position to know" that Frank Robinson "was wanted on a warrant for a theft chop shop operation" and arrested him "the very next day after this trial."  Assistant State's Attorney Michael Connelly noted that the arrest warrant allegation was not in the motion for a new trial and the State was not aware, even on that day, that Frank Robinson was wanted on an arrest warrant.  The assistant State's Attorney argued for the denial of defendant's motions.  Defendant asserted that none of the testimony established that defendant implied or stated that he possessed a weapon, which was a necessary element of the offense.  Defendant's motion for a new trial was denied.  Defendant was then sentenced to 10 years' imprisonment.

ANALYSIS

I

Defendant's first issue on appeal is that his conviction for attempted aggravated robbery must be reversed because the statute defining the offense of aggravated robbery violates due process of law.  

Whether a statute is constitutional "is a question of law which we review 
de
 
novo
."  
People v. Fisher
, 184 Ill. 2d 441, 448, 705 N.E.2d 67 (1998).  
In order to establish that a statute violates the equal protection or due process clause of the fourteenth amendment, the challenger must demonstrate that there is no rational relationship between the classification in the statute and a legitimate government purpose.  
People v. McLaughlin
, 324 Ill. App. 3d 909, 915, 755 N.E.2d 83 (2001).  A basic presumption exists that statutes are constitutional and the party challenging a statute bears the burden of establishing its invalidity.  
People v. McClanahan
, 191 Ill. 2d 127, 131, 729 N.E.2d 470 (2000).  

The aggravated robbery statute provides:

   "A person commits aggravated robbery when he or she 
takes property
 from the person or presence of another by the 
use of force or by threatening the imminent use of force
 while 
indicating verbally or by his or her actions
 to the victim that he or she is presently armed 
with a firearm or other dangerous weapon
 ***.  This offense shall be applicable even though it is later determined that he or she had no firearm or other dangerous weapon *** in his or her possession when he or she committed the robbery."  (Emphasis added.) 720 ILCS 5/18-5(a) (West 2000).

Defendant asserts that the aggravated robbery statute, by not specifying that a victim must "reasonably" believe that the offender is armed, does not provide adequate notice of what type of conduct constitutes aggravated robbery since a conviction may rest entirely on the subjective impression of the victim.  Defendant argues that under the statute, a defendant "will be convicted of aggravated robbery even if the victim 
unreasonably
 believes that the offender is armed based on his words or conduct." (Emphasis original.)

We disagree with defendant's contention that "a person will also be convicted of aggravated robbery if he simply happened to have his hand in his pocket, behind his back, in his shirt sleeve, or, as in the instant case, under his [T]-shirt, as long as the victim also testifies that the conduct caused him to believe the defendant was armed, however unreasonable that belief may be."  While the aggravated robbery statute permits charging and convicting a person of aggravated robbery based on the impression of the victim, the danger of arbitrary and discriminatory enforcement is minimal in that the accused must also take property from the person by the use of force or by threatening the imminent use of force while indicating verbally or by his or her actions that he is presently armed with a firearm or other dangerous weapon.  Defendant's assertions have failed to demonstrate the invalidity of the aggravated robbery statute.   

II

Defendant next contends that the State did not prove beyond a reasonable doubt that he indicated verbally or by his actions that he was armed during the incident and, therefore, his conviction should be reduced to attempted robbery.  The State responds that the testimony and evidence adduced at trial established beyond a reasonable doubt that defendant did indicate to the Robinsons that he was armed with a weapon.

The standard for reviewing the sufficiency of the evidence in a bench trial is the same as it is in a jury trial.  
People v. Herring
, 324 Ill. App. 3d 458, 460, 754 N.E.2d 385 (2001).  The standard of review for an appeal challenging a criminal conviction based on the sufficiency of the evidence is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt.  
People v. Schott
, 145 Ill. 2d 188, 203, 582 N.E.2d 690 (1991). 

In order for the State to prove a defendant guilty of aggravated robbery, it must show that the defendant took property from the person by the use of force or by threatening the imminent use of force while indicating verbally or by his or her actions to the victim that he or she is presently armed with a firearm or other dangerous weapon.  See 720 ILCS 5/18-5(a) (West 2000).  Defendant in the instant case was found guilty of attempted aggravated robbery.  "A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense."  720 ILCS 5/8-4(a) (West 2000).  

Deference is given to the trier of fact on issues of witness credibility, the weight of the witness testimony, and the inferences that may be drawn from the evidence.  
People v. Wittenmyer
, 151 Ill. 2d 175, 191, 601 N.E.2d 735 (1992).  In the instant case, Mr. and Mrs. Robinson testified that defendant's right hand was under his shirt the entire time that he was in the towing company office.  Mrs. Robinson testified that defendant threatened her and her husband, pushed her, and demanded money. The Robinsons testified that they thought that defendant had a gun.  In contrast, defendant testified that he did not threaten or touch anyone and did not demand money from the Robinsons.  He stated that he entered the office only to complain to management about a rude employee.  After viewing the evidence in the light most favorable to the prosecution and considering the deference given to the trial court's assessment of witness credibility, we cannot say that the elements of attempted aggravated robbery were not proven beyond a reasonable doubt.

Defendant alternatively contends that his conviction should be changed to the lesser offense of attempted robbery.  A person commits robbery when he or she takes property from a person by the use of force or by threatening the use of force.  720 ILCS 5/18-1 (West 2000).  As stated earlier, two eyewitnesses in the instant case testified that defendant, by his words and actions, attempted to take money while implying that he was armed.  Again, assessing the credibility of the witnesses and resolving conflicts in testimony are tasks uniquely reserved for the trier of fact.  
People v. Young
, 128 Ill. 2d 1, 49, 538 N.E.2d 453 (1989).  

After a review of the record in the light most favorable to the State, it is our view that any rational trier of fact could find the essential elements of attempted aggravated robbery have been proven beyond a reasonable doubt. 

III

Defendant next asserts that he was denied effective assistance of counsel when his attorney failed to impeach the State's witnesses with evidence that contradicted their testimony.  Namely, the officers on the scene were not called to testify and the police reports that they prepared were not presented to the trial court.  The State responds that defense counsel's cross-examination decisions were matters of trial strategy and did not deny defendant effective assistance.  

Generally, the decision whether to cross-examine or impeach a witness is a matter of trial strategy that will not support a claim of ineffective assistance of counsel.  
People v. Pecoraro
, 175 Ill. 2d 294, 326, 677 N.E.2d 875 (1997).  Defendant here contends that his trial counsel failed to present "impeachment by omission" evidence that would have discredited the testimony of the State's key witnesses. 

The rule for impeachment by omission is that it is permissible to use prior silence to discredit a witness' testimony if:  (1) it is shown that the witness had an opportunity to make a statement, and (2) under the circumstances, a person normally would have made the statement.  
People v. Conley
, 187 Ill. App. 3d 234, 244, 543 N.E.2d 138 (1989); 
People v. Gonzalez
, 120 Ill. App. 3d 1029, 1038, 458 N.E.2d 1047 (1983).

In order to succeed on an ineffective assistance of counsel claim, it must be shown that:  (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.  
Strickland v. Washington
, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068 (1984).  If no prejudice to the defendant is established, then there is no need to determine separately whether counsel's performance was deficient.  
People v. Albanese
, 104 Ill. 2d 504, 527, 473 N.E.2d 1246 (1984).

Defendant draws the court's attention to his trial counsel's cross-examination of the State's key witnesses:  

   "[MR. BRESLIN] Q. But you didn't tell them he had his hand in his pocket or under his shirt?  You didn't tell Officer Anderson and Officer Hernandez that?  

   [MRS. ROBINSON] A. They didn't ask me that.

   Q. So is it correct that you could not see if he had a gun in his pocket or under his shirt to Officer Anderson and Hernandez?

   A. I didn't say that.  I told them that I thought he had   a gun.

   Q. You did tell them that?

   A. Yes.

   Q. You told Officer Anderson and Officer Hernandez that you thought that he had a gun?

   A. I thought he was there to rob us.

   Q. Did you indicate he was acting strangely?

   A. No, I didn't.

   Q. Did you tell those officers that he ever asked for money at all?

   A. No that's not true.

   Q. Did you tell Officer Anderson and Officer Hernandez that Mr. Williams had asked for money?

   A. Yes.

* * *

   Q. Did you talk to Officers Anderson and Hernandez following this incident and ever indicate to them during the statement that you gave that Mr. Williams pinned your head to the desk?

   A. I had no reason to talk to them after that.  I answered the question that they asked me.

   Q. You merely answered the questions that they asked?

   A. Right and I described the situation to them, yes.

   Q. And you did not indicate to them that he had your head pinned against the desk?

   A. I told them that he had me pinned in the corner, yes.

   Q. You said what?

   A. I told them he pushed me into the corner and held me down on the desk, yes."

The following colloquy occurred between defense counsel and Mr. Robinson:

   "Q. Did you give [Officer Anderson and Officer Hernandez] a statement when they arrived?

   A. Whoever the officer was that questioned me, I answered as to what happened.  

   Q. Did you tell Officer Anderson and Officer Hernandez that Mr. Williams came in your office and acted strangely?   

   Closed the door behind him and acted strangely?  Did you  say that?  

   A. I told the officer that he came into the office and locked the door behind him.

   Q. Are you sure you may not have just said that he came in and closed the door behind him?

   A. When the officer questioned me, I told him exactly what happened.

   MR. BRESLIN [Defense counsel]: I would request that the witness answer my question. 

   THE COURT: Do you understand his question, Mr. Robinson?

   THE WITNESS: No.

   THE COURT: I'll let you restate the question.  Go ahead.

   MR. BRESLIN: Q. Did you state to Officer Hernandez and Officer Anderson that Mr. Williams came into the room, closed the door behind him and acted strangely?

   A. I don't remember that.  I don't remember if I used the word, 'strangely.'  That's not my recollection."  

While defense counsel did go into the witnesses' statements to the officers during cross-examination, the questioning did not resolve the issue of what they actually stated to the officers on the scene.  The record does not contain a copy of any police reports made relative to defendant's arrest.  Mr. Robinson was never asked whether he told police that defendant had his hand under his shirt.  More importantly, the officers were not called to testify.  "A reasonable standard of representation dictates that defense counsel subject the State's case to 'meaningful adversarial testing ***.'"  
People v. Mejia
, 247 Ill. App. 3d 55, 65, 617 N.E.2d 799 (1993).

Defendant also draws the court's attention to the following presentation to the court:

   "MR. BRESLIN [Defendant's attorney]: There would be an offer of proof that Mr. Williams closed the door behind him with no locking of any door[.]  Mr. Robinson asked him to open the door and told his wife to call the police.  He was trying to separate Mr. Williams from his wife and in doing so was pushed against a wall, that Mr. Williams took the phone away, that Mr. Robinson feared his life and his wife's life were in extreme danger, defended himself by shooting the defendant in the left leg.  That's the only statement that was elicited.  There is no mention of any other that your Honor heard.  That would be what took place in the office.

   MR. ROLLAG [Assistant State's Attorney]:  Your honor, I would stipulate, if Counsel would stipulate, that the officers arrived at the scene, spoke to the victims shortly thereafter at that time.  That is what is listed in the police reports.  Then it was turned over to detectives.  Is that the stipulation you would like?  I would have no objection. 

   MR. BRESLIN: That's fine." 

The police reports mentioned in the oral stipulation were not made a part of the common law record.  No written stipulation is made a part of the record.  Defendant made an offer of proof.   However, an offer of proof is not equivalent to a stipulation.  The stipulation lacks clarity.  In our view, the stipulation in this case is an inadequate substitute for impeachment testimony by the police.   

An instructive case is 
People v. Skinner
, 220 Ill. App. 3d 479, 581 N.E.2d 252 (1991).  The dispositive issue on appeal in 
Skinner
 was whether he was denied effective assistance of counsel.  
Skinner
, 220 Ill. App. 3d at 483.  In 
Skinner
, defense counsel failed to call defendant's employer, defendant's mother and stepfather, and failed to cross-examine the eyewitness to the burglary about his "post-theft silence."  More specifically, the police report in 
Skinner
 listed the name of the eyewitness, but showed that the eyewitness gave no information to the police officers regarding the burglary.  

Skinner asserted that it was ineffective assistance of counsel not to cross-examine that witness on his failure to identify Skinner as the perpetrator of the burglary until six months after the occurrence.  
Skinner
, 220 Ill. App. 3d at 484.  In the 
Skinner
 court's view, while sound strategy protected counsel's decision not to call defendant's employer, counsel's failure to call defendant's mother and stepfather and to cross-examine the witness regarding his post-theft silence constituted ineffective assistance of counsel that, when combined, created a reasonable probability that the result of the proceedings would have been different had these omissions not occurred.  
Skinner
, 220 Ill. App. 3d at 483-84.  The 
Skinner
 court noted that defense counsel attempted no impeachment of the key witness and reasoned that, while the omission alone may not have affected the outcome of the proceedings, the combination of this error together with the others "operated to undermine the outcome of the proceedings." 
Skinner
, 220 Ill. App. 3d at 485. 

In our view, the manner, mode, and content of the offer of proof in the instant case is an inadequate substitute for live testimony.  Additionally, the record does not reflect that defendant received a written answer to his motion for discovery and the State does not contend that an answer was filed pursuant to defendant's discovery motion.  After a review of the record and trial proceedings in this case, it is our view that defense counsel's representation fell below the standard of competent representation.  This is a close case and, but for the ineffective assistance of counsel, there is a reasonable probability that the result of the proceedings would have been different.  Accordingly, we reverse defendant's conviction and remand this case for a new trial.  

IV

Defendant also contends that he was denied due process when the State failed to disclose that Mr. Robinson was wanted on an arrest warrant.  The State asserts that it was not aware, and could not have been aware, of Mr. Robinson's pending arrest warrant and the undisclosed information was not material to the defense.

The United States Supreme Court has held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  
Brady v. Maryland
, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97 (1963).  Therefore, to proceed under a 
Brady
 claim, the defendant must demonstrate that:  (1) the evidence is favorable to the defendant because it is either exculpatory or impeaching; (2) the evidence was either wilfully or inadvertently suppressed by the State; and (3) prejudice ensued to the defendant.  
People v. Burt
, No. 86898 (October 18, 2001), citing 
Strickler v. Greene
, 527 U.S. 263, 281-82, 144 L. Ed. 2d 286, 302,  119 S. Ct. 1936, 1948 (1999).  The Court reasoned:  "A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant."  
Brady
, 373 U.S. at 87-88, 10 L. Ed. 2d at 219, 83 S. Ct. at 1197.  

The 
Brady
 rule has been codified in Illinois by Supreme Court Rule 412(c) (134 Ill. 2d R. 412(c)).  Rule 412(c) requires the State to "disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged."  134 Ill. 2d R. 412(c).  Information that may cast doubt on the credibility of a State witness tends to negate the guilt of the accused and must be disclosed.  
People v. Sharrod
, 271 Ill. App. 3d 684, 688, 648 N.E.2d 1141 (1995).  

Among the information that the State must disclose is evidence with potential impeachment value such as prior convictions, probationary status, pending criminal charges, and juvenile adjudications.  
Sharrod
, 271 Ill. App. 3d at 688. Noncompliance with this obligation is excused only where the prosecution did not know and could not, through the exercise of due diligence, have become aware of the matter in question.  
People v. Redmond
, 146 Ill. App. 3d 259, 263, 496 N.E.2d 1041 (1986).  It has been noted that whenever the prosecution fails, in response to a request, to disclose impeachment evidence relating to the credibility of its key witnesses, the truth-finding process of trial is necessarily distorted.  
Redmond
, 146 Ill. App. 3d at 263, citing 
Giglio v. United States
, 405 U.S. 150, 31 L. Ed. 2d 104, 92 S. Ct. 763 (1972).   

The record here indicates that defendant's June and August 1999 discovery requests demanded the disclosure of any criminal or civil action pending against any of the State's witnesses and criminal records.  The common law record, however, does not establish that the State filed a response to the requests.

Although the State can be held responsible for what it does not know, because there had not been an arrest prior to or during trial, we cannot say that even with due diligence the State would have discovered the warrant for Mr. Robinson's arrest.  There is no indication that there were any proceedings pending against Mr. Robinson during trial or subsequent to his arrest.  Because Mr. Robinson's arrest, as such, has no probative value, we cannot say that such information constitutes a 
Brady
 violation and could have changed the trial result.   

V

Finally, defendant relies on 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), asserting that mandatory Class X sentencing violates his right to due process and trial by jury because it subjects him to increased punishment without notice or a jury finding upon proof beyond a reasonable doubt.  Because we have granted defendant a new trial, we do not reach this issue.  

For the foregoing reasons, defendant's conviction for attempted aggravated robbery is reversed and we remand this case for a new trial. 

Reversed and remanded.

TULLY and McNULTY, JJ., concur.