THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES LEE, Defendant-Appellant.

Third District    No. 3—02—0303

Opinion filed January 16, 2004.

Mark D. Fisher (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

Jeff Tomczak, State's Attorney, of Joliet (Lawrence M. Bauer and Judith Z. Kelly (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Appellant, James Lee, was convicted of unlawful possession of a controlled substance and unlawful possession of a controlled substance with intent to deliver as a result of cocaine found on his person when he was arrested for violation of a Joliet municipal ordinance outlawing loitering for the purpose of engaging in drug-related activity. Lee was sentenced to a term of four years' imprisonment. Lee appeals his convictions.

## FACTS

On January 17, 2001, James Lee was indicted for unlawful possession of a controlled substance containing cocaine and unlawful possession of a controlled substance with intent to deliver. On July 2, 2001, Lee filed a motion to suppress the cocaine found on his person at the time of his arrest arguing that no probable cause existed for the arrest. The only witnesses to testify at the hearing on the motion to suppress were Officers David Mueller and Guy Jones of the City of Joliet police department. The officers testified that at 2 p.m. on August 15, 2000, they received a call from dispatch instructing them to go to the corner of Second and Mississippi Streets, an area which had been designated as having a significant amount of gang and drug activity. The officers were to investigate a phone call received from a citizen of Joliet indicating that three African-American males were selling drugs on the corner. Once at the scene, the officers observed the corner from a distance of approximately two blocks for two to five minutes. During

this time, the officers observed a van pull over to a curb in an area with signs indicating, "No Parking, Stopping, or Standing." Officer Jones testified that the van was stopped at the curb for 10 to 15 seconds. The individuals on the corner approached the van and began a conversation with the passengers. Of the individuals who were on the corner, Officer Mueller recognized Willard May as a gang member and was aware that Lee had been arrested previously for drug-related offenses, although he had not been convicted.

Although the officers did not see an exchange of money or drugs, they believed, based on their experience, that a drug transaction was about to take place. When the van pulled away, the officers approached the men on the corner and patted them down. The officers did not find any contraband or weapons during the pat down, but arrested Lee and the two other men for violating a Joliet municipal ordinance prohibiting loitering for the purpose of engaging in drug-related activity.

The Joliet ordinance enumerates nine criteria as being among the circumstances to be considered by officers when determining whether a suspect is manifesting a drug-related purpose. Officer Jones testified that he felt Lee was violating subsections 3, 4, and 9 of section (b) of the ordinance at the time of his arrest, while officer Mueller believed that Lee was violating subsections 3, 8, and 9. Officer Mueller stated that his supervisors suggest that officers find three violations of the circumstances enumerated in section (b) before finding a violation of the ordinance, although a violation of two subsections will also support an arrest. However, Officer Jones testified that a violation of any one subsection of the ordinance would support an arrest for loitering with the purpose of engaging in drug-related activity. After hearing the officers' testimony, the trial court denied the motion to suppress.

A jury trial commenced on February 21, 2002. Officer Jones testified in significantly the same manner as his testimony during the motion to suppress and indicated that he discovered six bags containing white milky substances in Lee's right pant pocket when a search incident to arrest was conducted. The substances contained in the bags tested positive for cocaine and cumulatively weighed .8 grams. Following its deliberations, the jury convicted Lee on both charges. The court sentenced Lee to a term of four years imprisonment. Lee appeals his convictions.

## ANALYSIS

■ Lee first argues that the Joliet ordinance defining the criminal offense of loitering for the purpose of engaging in a drug-related activity is unconstitutionally vague. Whether a statute is constitutional is an issue of law which we review *de novo. People v. Williams*, 329 Ill.

App. 3d 846, 851, 769 N.E.2d 518, 522 (2002). Lee contends that this court should strike down the Joliet drug-loitering ordinance, thus eliminating the basis for Lee's arrest and the search incident to that arrest during which the police found the cocaine leading to his convictions.

The Joliet ordinance at issue provides that it is "unlawful for any person to loiter in or near any thoroughfare, place open to the public, or near any public or private place in a manner and under circumstances manifesting the purpose to engage in drug-related activity." Joliet Municipal Code § 21—10.1 (1990). The statute goes on to provide nine criteria as being "among the circumstances which may be considered in determining whether such purpose is manifested." Joliet Municipal Code § 21—10.1 (1990). These criteria are:

"(1) Such person is a known unlawful drug user, possessor, or seller ***; (2) Such person is currently subject to an order prohibiting his or her presence in a high drug activity geographic area; (3) Such person behaves in such a manner as to raise a reasonable suspicion that he or she is about to engage in or is then engaged in an unlawful drug-related activity, including by way of example only, such person acting as a 'lookout'; (4) Such person is physically identified by the officer as a member of a 'gang' or association which has as its purpose illegal drug activity; (5) Such person transfers small objects or packages for currency in a furtive fashion; (6) Such person takes flight upon the appearance of a police officer; (7) Such person manifestly endeavors to conceal himself or herself or any object which reasonably could be involved in an unlawful drug-related activity; (8) The area involved is by public repute known to be an area of unlawful drug use and trafficking; or (9) The premises involved are known to have been reported to law enforcement as a place suspected of drug activity." Joliet Municipal Code § 21—10.1 (1990).

Lee contends that this ordinance is unconstitutionally vague because the phrase "circumstances manifesting the purpose to engage in drug-related activity" and the ordinance section listing circumstances which may be considered in determining whether such purpose is manifested do not provide adequate notice of the prohibited conduct or establish minimal guidelines for enforcement.

■ In construing a municipal ordinance, the same rules are applied as those which govern the construction of statutes. *City of Chicago v. Morales*, 177 Ill. 2d 440, 447, 687 N.E.2d 53, 59 (1997). Statutes are presumed constitutional and it is the court's duty to construe a legislative enactment so as to affirm its constitutionality and validity, if it is reasonably susceptible to such a construction. *Morales*, 177 Ill. 2d at 448, 687 N.E.2d at 59. However, criminal

statutes are to be strictly construed in favor of the accused and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute. *Morales*, 177 Ill. 2d at 448, 687 N.E.2d at 59.

■ A fundamental element of the guarantees of due process is the requirement that the proscription of a criminal statute be clearly defined. *Morales*, 177 Ill. 2d at 448, 687 N.E.2d at 59. To successfully challenge a criminal statute as being vague on its face, the statute must be impermissibly vague in all its applications. *Morales*, 177 Ill. 2d at 448, 687 N.E.2d at 59. To satisfy the vagueness doctrine, a criminal statute must meet two criteria. First, a criminal statute must be sufficiently definite so that it gives persons of ordinary intelligence a reasonable opportunity to distinguish between lawful and unlawful conduct. *Morales*, 177 Ill. 2d at 449, 687 N.E.2d at 60. Second, a penal statute must adequately define the criminal offense in such a manner that does not encourage arbitrary and discriminatory enforcement. *Morales*, 177 Ill. 2d at 449, 687 N.E.2d at 60.

Ordinances prohibiting loitering associated with drug activity have not been examined by Illinois courts. With ordinances substantially similar to the one at issue in the instant case, the states of Ohio and Louisiana have struck them down, while the state of Washington upheld a similar ordinance. See *City of Akron v. Rowland*, 67 Ohio St. 3d 374, 618 N.E.2d 138 (1993); *State v. Muschkat*, 706 So. 2d 429 (La. 1998); *City of Tacoma v. Luvene*, 118 Wash. 2d 826, 827 P.2d 1374 (1992). We find the reasoning of the Ohio and Louisiana decisions persuasive.

■ The Joliet ordinance permits arrest when the accused loiters under "circumstances manifesting the purpose to engage in drug-related activity". Joliet Municipal Code § 21—10.1 (1990). This phrase is not sufficiently definite so that an ordinary person can comprehend the prohibited conduct. Due process mandates that ordinary persons not be required to guess at a law's meaning but, rather, can know what conduct is forbidden and act accordingly. *Morales*, 177 Ill. 2d at 449-50, 687 N.E.2d at 60. A person reading the ordinance cannot know what specific acts would "manifest" a drug-related purpose. While the ordinance lists nine criteria to be used by police in determining whether a drug-related purpose has been manifested, the ordinance states that the nine criteria are only "*among* the circumstances which may be considered." (Emphasis added.) Joliet Municipal Code § 21—10.1 (1990). The word "among" indicates that there are other circumstances not enumerated in the ordinance which may be used to form the basis of an arrest and conviction. The average citizen can only speculate as to other circumstances law enforcement officers

would perceive as manifesting a drug-related purpose. By way of example, it appears that a person standing outside his place of business could be arrested under the ordinance if that place of business is located in an area known for unlawful drug use and someone in a vehicle pulls up and asks for directions.

The Joliet drug-loitering ordinance also fails to provide adequate enforcement standards. Where lawmakers fail to provide minimal guidelines to govern law enforcement, a criminal law may permit a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections. *Morales*, 177 Ill. 2d at 456, 687 N.E.2d at 63. Under the Joliet drug-loitering ordinance, police are given unfettered discretion in determining whether a person's conduct manifests drug activity. Not only are most of the enumerated criteria indefinite (*i.e.*, "such person behaves in such a manner as to raise a reasonable suspicion that he or she is about to engage in or is then engaged in an unlawful drug-related activity"), but it also allows for law enforcement to consider nonenumerated factors. The ambiguity in enforcement standards was evidenced in the testimony of Officers Mueller and Jones at the suppression hearing. The officers indicated that they relied on different criteria under the statute for Lee's arrest. Furthermore, the officers disagreed as to the number of circumstances which must be present before an arrest can be made. Officer Mueller indicated that two or three of the circumstances listed under section (b) of the ordinance should be found to effectuate an arrest, while Officer Jones indicated that only one circumstance was necessary. Therefore, because the Joliet drug-loitering ordinance fails to provide adequate notice of prohibited conduct and does not delineate adequate enforcement standards, the ordinance is unconstitutional.

Having concluded that the drug-loitering ordinance is unconstitutional, we must next determine whether evidence seized incident to Lee's arrest for violation of the ordinance must be excluded. In *People v. Krueger*, 175 Ill. 2d 60, 75, 675 N.E.2d 604, 612 (1996), the Illinois Supreme Court determined that the exclusionary rule arising out of the state constitution precludes the admission of evidence even if seized in good faith by police officers acting pursuant to a statute later determined to be unconstitutional. In the instant case, the officers arrested Lee pursuant to the Joliet drug-loitering ordinance. Because the statute is unconstitutionally vague, any arrest pursuant to the statute in unlawful. The cocaine found on Lee was seized in a search incident to this unlawful arrest and must be suppressed.

Accordingly, because the State could not prevail on remand without the suppressed evidence, Lee's convictions must be reversed and the

sentence vacated. *People v. Smith*, 331 Ill. App. 3d 1049, 1056, 780 N.E.2d 707, 713 (2002).

Reversed.

McDADE, J., concurs.

PRESIDING JUSTICE HOLDRIDGE, specially concurring:

The majority declares the Joliet ordinance unconstitutional on the grounds that the ordinance fails to (1) provide adequate notice of the prohibited conduct, and (2) establish adequate enforcement guidelines for police officers. I disagree with these conclusions and believe the ordinance is constitutional. Nevertheless, since the police officers lacked probable cause when they arrested James Lee (the event that produced the drug evidence at issue), I agree with the majority's ultimate conclusion that his conviction should be reversed.

1. Constitutionality of Ordinance

Municipal ordinances are construed according to the general rules of statutory construction. *City of Chicago v. Morales*, 177 Ill. 2d 440 (1997). It is axiomatic that a court must construe a challenged statute as constitutional if the statute is reasonably susceptible to such construction. *Morales*, 177 Ill. 2d 440. It is also axiomatic that a court's paramount objective is to ascertain and effectuate the legislature's intent. *People v. Boykin*, 94 Ill. 2d 138 (1983). In pursuing this objective, the court must apply the plain and ordinary meaning of the words used in the statute. *People v. Hicks*, 164 Ill. 2d 218 (1995).

The Joliet ordinance prohibits loitering in a manner and under circumstances manifesting the purpose to engage in drug-related activity. Joliet Municipal Code § 21—10.1 (1990). The plain meaning of this language contravenes the majority's conclusion. The word *manifest* means "to make evident or certain by showing or displaying." Merriam-Webster's Collegiate Dictionary 707 (10th ed. 1997). The word *purpose* means "something set up as an object or end to be attained"; hence the phrase *on purpose* means "by intent." Merriam-Webster's Collegiate Dictionary 949 (10th ed. 1997). These words establish a *mens rea* element (intent) and require, as a prerequisite to an arrest, that a suspect exhibit some show or display (overt conduct) signaling an intention to engage in drug-related activity. Thus the majority is wrong in supposing that "a person standing outside his place of business could be arrested under the ordinance if that place of business is located in an area known for unlawful drug use and someone in a vehicle pulls up and asks for directions." 345 Ill. App. 3d

at 787. Such facts would not support an arrest because, according to the plain meaning of the words used in the ordinance, the businessperson would also have to perform some act making it evident or certain that he intended to commit a drug crime.

The ordinance is sufficiently clear to provide adequate notice of the prohibited conduct. Citizens are placed on notice that they cannot, while loitering, commit acts signaling an intention to violate drug laws. I am confident that if the above-mentioned businessperson read the ordinance he would not feel a need to avoid standing outside his building for fear that a motorist might pull up and request directions. Since he ostensibly harbors no intent to commit drug crimes, he can rest assured that he will not violate the ordinance so long as he conforms his conduct to his intent. On the other hand, persons who do intend to commit drug crimes are placed on notice that if they engage in overt acts signaling their intent, they are subject to arrest under the ordinance. An overt act is required to give the word *manifesting* its plain and ordinary meaning. This requirement, combined with the *mens rea* element of intent, alleviates the majority's concern about adequate notice.

The ordinance is also sufficiently clear to guide police officers in properly enforcing its provisions. Although some of the nine criteria provided in the ordinance do not specify an overt act, this omission does not render the ordinance unconstitutional because the city council did not give such criteria conclusive effect. Rather, the council explained that the criteria merely describe circumstances "which may be considered" in the overall determination of whether the ordinance has been violated. Such consideration is guided by the plain meaning of the word *manifesting*. Thus, if police officers see a person who is a known drug user (criterion No. 1), they may become suspicious and conduct further surveillance, but they cannot arrest the person because he has not committed an overt act signaling a current intention to violate drug laws. If during further surveillance the officers see the person engage in overt drug-related acts,[1] then they can arrest him under the ordinance. These guidelines are clear from the plain language of the ordinance, and I believe they satisfy the demands of due process.

As the majority notes, three appellate courts from other states have addressed the constitutionality of similar ordinances. See *State v. Muschkat*, 706 So. 2d 429 (La. 1998) (declaring the ordinance

---

[1]Examples of such acts include acting as a "lookout" for a drug transaction (criterion No. 3), furtively transferring small objects or packages for currency (criterion No. 5), and taking flight upon seeing a police officer (criterion No. 6).

unconstitutional); *City of Akron v. Rowland*, 67 Ohio St. 3d 374, 618 N.E.2d 138 (1993) (declaring the ordinance unconstitutional); *City of Tacoma v. Luvene*, 118 Wash. 2d 826, 827 P.2d 1374 (1992) (upholding the ordinance as constitutional). Of these three courts, only the Supreme Court of Washington honored the axiomatic principles of statutory construction in its analysis. See *Luvene*, 118 Wash. 2d 826, 827 P.2d 1374. Accordingly, I believe that court's analysis is more reliable than the analyses in the Louisiana and Ohio cases.

### 2. Probable Cause

Although I believe Joliet's drug-loitering ordinance is constitutional, I would still reverse Lee's conviction because the instant facts do not show probable cause for his arrest. At most the arresting officers observed him standing on a curb and speaking to someone in an illegally parked van. When combined with the surrounding circumstances, such observation was certainly enough to heighten the officers' suspicion and warrant further surveillance. However, they should have waited and watched for some overt act signaling that Lee intended to engage in drug-related activity. As discussed above, such an approach was mandated by the statutory requirement that Lee engage in conduct *manifesting* the requisite criminal intent.