(No. 42375.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. JAMES BAXA, Appellant.

*Opinion filed Nov. 30, 1971.—Modified on denial of rehearing
January 27, 1972.*

FREDERICK F. COHN, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Spring-field, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and ALAN M. POLIKOFF, Assistant State's Attorneys, of counsel,) for the People.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, James Baxa, was found guilty of theft after a bench trial in the circuit court of Cook County, and he was sentenced to imprisonment for not less than three years nor more than three years and one day. He has appealed to this court.

The indictment charged that on October 25, 1967, the defendant and Walter Palka "knowingly obtained unauthorized control over stolen property, to wit: one hundred sixty seven cartons of steam irons, the property of Ringsby Truck Lines, Inc., a corporation, of a value in excess of one hundred fifty dollars, knowing the property to have been stolen by another, and intending to deprive said

Ringsby Truck Lines, Inc., permanently of the use and benefit of said property ***" in violation of section 16—1(d)(1) of the Criminal Code. Ill.Rev.Stat. 1967, ch. 38, par. 16—1(d)(1).

Both defendants pleaded not guilty. Their motions to suppress certain cartons of steam irons, which had been seized on October 25 from the rear of a station wagon driven by Palka in which Baxa was a passenger, were denied. Palka died prior to the defendant's trial. At that trial the parties stipulated that the two police officers who testified at the hearing on the motions to suppress would give the same testimony at the trial, and that the property seized from the station wagon was owned by the Ringsby system. It was also stipulated that any hearsay evidence that had been received during the hearing on the motion to suppress would be excluded from consideration in determining the defendant's guilt or innocence. The transcript of the testimony on the motion to suppress was then made a part of the trial record. No further evidence was introduced, and the court found the defendant guilty as charged in the indictment.

On this appeal the defendant contends that evidence obtained pursuant to an illegal arrest was improperly admitted into evidence, that the trial court erred in refusing to order the State to produce, for impeachment purposes, documents containing prior written statements of prosecution witnesses, and that the evidence failed to establish his guilt beyond a reasonable doubt. We find it necessary to consider only the latter contention.

At the hearing on the motions to suppress, Sergeant Robert Barrett testified that at approximately 4:30 A.M. on October 25, 1967, he spoke by telephone with an informant who told him "that there was going to be a meet and a pay-off on a load of merchandise." Barrett stated that he met with this informant at "[a]bout 6:30 A.M." that same morning and was then told that "Walter Palka was going to be a pay-off man on a load of

merchandise with some other people ***." "[T]he exact contents of the load was not known or where it was going to go."

Barrett and his informant met again at around 7:30 that morning, and the informant said that "there was going to be a meet at the restaurant at Archer and Damen," that a trailer was stolen and dumped on a lot around 37th and Halsted, and that it had contained "approximately one hundred and fifty cartons of G.E. electric steam irons."

Barrett testified that he and other officers found the truck in the area of 37th and Halsted. It contained only "a case of broken light bulbs and a ladder." The truck was owned by the Ringsby system, and it was apparently first reported as stolen at about 8:30 A.M. Barrett then met the informant at Archer and Damen at approximately 10:00 A.M., and was told that "Walter Palka and James Baxa would be leaving the restaurant and driving a black 1965 or '66 Ford station wagon." He testified: "We waited in the area of the restaurant and then observed the two subjects [Palka and Baxa] come out and get in the car, and followed them up to the area of Armitage and Pulaski." They then "drove west on Armitage up to around Kedvale and went down South on a one-way street." Barrett lost sight of the vehicle for approximately "five minutes or so," and then "saw the car coming out of an alley on Keeler and traveling east on Armitage." He followed it "to a stop light at Pulaski and Armitage" where he "[p]ulled up alongside of them" and "observed several cartons with markings of G.E. steam irons in the back of the *** wagon." He then stated: "I followed them to, I believe, it was Armitage and Lawndale and pulled them over and identified myself and looking again at the car, then I placed them under arrest."

On cross-examination Barrett admitted that he had testified before the grand jury that at approximately 4:00 A.M. on October 25 he had received a telephone call at his home from a reliable informant that a load was being

taken from Ringsby Truck Lines. He then testified, however, that he did not know this informant "too well," that he had used him only once before, and that no arrest had resulted from this prior information. No effort was made to obtain an arrest warrant or a search warrant. Barrett also acknowledged that the report he had written for his supervisor, approximately three hours after the October 25 arrests, did not state that he had looked into the station wagon prior to the time he stopped it and arrested Palka and the defendant.

When the hearsay evidence which was admitted at the hearing upon the motion to suppress is eliminated from consideration in accordance with the stipulation of the parties, what remains is evidence that when the defendant was arrested he was riding as a passenger in a car which contained 15 cartons of steam irons, part of a total of 167 cartons that had been stolen the preceding evening. To infuse this evidence with sufficient probative force to establish the defendant's guilt beyond a reasonable doubt, the prosecution relies upon the presumption that flows from the recent, exclusive, unexplained possession of stolen property.

That presumption, when its basic facts have been established, has been held sufficient in itself to permit conviction of larceny. (People v. Reynolds (1963), 27 Ill.2d 523; People v. Litberg (1952), 413 Ill. 132; People v. Moore (1935), 362 Ill. 102; People v. Norris (1936), 362 Ill. 492; People v. Sampson (1929), 337 Ill. 643.) The defendant in this case however, was charged with having "knowingly obtained unauthorized control of stolen property." While possession is an element of this offense, knowledge that the property was stolen is also an essential element. Both elements must be proved in order to establish guilt. (People v. Stewart (1960), 20 Ill. 387; People v. Klapperich (1939), 370 Ill. 588; People v. Rubin (1935), 361 Ill. 311.) Knowledge may be established by proof of circumstances that would cause a reasonable man to

believe that the property had been stolen. *(People v. Stewart (1960), 20 Ill. 387, 392; People v. Grodkiewicz (1959), 16 Ill.2d 192, 196.)* But possession alone, even if exclusive, is insufficient to establish that a defendant knew that the property was stolen when he received it. *People v. Klapperich (1939), 370 Ill. 588, 592; People v. Rubin (1935), 361 Ill. 311, 328; People v. Knight (1926), 323 Ill. 567, 574.*

We do not find it necessary to determine whether the element of possession was established in this case by proof that the stolen goods were in a station wagon in which the defendant was riding as a passenger (but see *People v. Evans (1926), 24 Ill.2d 11),* because there is no proof that the defendant knew that the goods were stolen. In the absence of proof of that element of the offense, the defendant's conviction cannot stand.

The judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*