THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DELRICO J. NELSON, Defendant-Appellant.

Third District   No. 3—01—0138

■

Opinion filed January 23, 2003.

518

Donna K. Kelly, of State Appellate Defender's Office, of Ottawa, for appellant.

William Poncin, State's Attorney, of Macomb (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

The defendant, Delrico J. Nelson, was charged with theft by receiving stolen property (720 ILCS 5/16—1(a)(4)(A) (West 2000)). The jury found him guilty and he was sentenced to five years' imprisonment. On appeal, the defendant challenges section 16—1(a)(4)(A) of the theft statute as unconstitutionally vague. We affirm.

## FACTS

At trial, Trevor Hiel testified that he worked in his parents' John

Deere dealership in Macomb. On August 14, 2000, Trevor went into the dealership office at about 6:15 a.m. He noticed that a laptop computer and a digital camera were missing. The batteries for both items and the battery charger for the camera had not been taken. He saw that the back door was unlocked, and a rear window was broken. After the police came to their office, the Hiels called the store where they had purchased the camera and told the store manager that the camera had been stolen.

The store manager testified that on the morning of August 15, 2000, the defendant came into the store. The defendant inquired about how to connect a particular model of digital camera to a computer. The camera he asked about was the same model as the camera stolen from the Hiels' office.

The defendant called the store later that morning and ascertained that the store had a battery charger for the same model of camera. The defendant asked if he could bring the battery to the store to make sure it matched the charger. The manager replied that he could and then called the police.

The defendant's girlfriend, Megan Bennett, testified that she went to the camera store and purchased a battery charger for the camera at the defendant's request. A police officer stated that after the store manager called, he went to the camera store, where he encountered Bennett.

Bennett told the officer that the digital camera and laptop computer were at the defendant's residence. Several officers then went to the defendant's home. One officer knocked on the door of the residence while other officers watched the sides and back of the house. After no one answered, one of the officers went across the street to the landlord's property to ask who lived in the house. Another officer then saw a man come out of the bedroom window, "hit the ground and crouch[ ] down and walk[ ] between the bushes and the house." The officer took the defendant into custody.

A police officer advised the defendant of his *Miranda* rights. He told the defendant that he had spoken to Bennett about a laptop and a camera stolen in a burglary, which the officer believed were in the house. The defendant led him to the room where the items were located.

At the police station, the defendant said that on the evening of August 13, 2000, he had gone to the Pace nightclub. The defendant told the police that after the Pace closed, he went to the home of someone named Mindy. He left Mindy's home at about 4 a.m. on August 14, 2000. As he was leaving, he heard Mark Woolam yell at him. Woolam asked the defendant if he wanted to buy a laptop computer and a digital camera.

The defendant purchased the items for a total of $380. Trevor testified that the value of the camera at the time it was stolen was between $400 and $499, and the value of the computer was about $900. The camera store manager said that the value of the camera was between $350 and $400. An expert testified that the value of the computer was between $900 and $1,100.

The defendant told the officers that Woolam said the items were not stolen. When the defendant asked Woolam for a receipt, Woolam refused, saying that he did not want to put his name on anything.

Both the charging instrument and the jury instructions stated that the defendant was accused of theft by knowingly obtaining control over property under such circumstances as would reasonably induce him to believe that the property was stolen.

At the conclusion of the trial, the jury found the defendant guilty.

## ANALYSIS

The defendant argues that the language in section 16—1(a)(4)(A) (720 ILCS 5/16—1(a)(4)(A) (West 2000)) of the theft statute, prohibiting a person from knowingly obtaining control over stolen property "under such circumstances as would reasonably induce him to believe that the property was stolen," is unconstitutionally vague under the fourteenth amendment due process clause.

■ We begin our analysis with the presumption that a statute is constitutional. When a statute does not implicate first amendment rights, it is facially unconstitutional only if it would not be valid under any set of circumstances. *People v. Izzo*, 195 Ill. 2d 109, 745 N.E.2d 548 (2001). The constitutionality of a statute is a question of law, which we review *de novo*. *People v. Williams*, 329 Ill. App. 3d 846, 769 N.E.2d 518 (2002).

■ A criminal statute may be vague and, therefore, violate a defendant's due process rights if it (1) fails to provide the type of notice that would enable a person of ordinary intelligence to understand what conduct is prohibited, or (2) authorizes or encourages arbitrary and discriminatory enforcement by the police. *City of Chicago v. Morales*, 527 U.S. 41, 144 L. Ed. 2d 67, 119 S. Ct. 1849 (1999); *Kolender v. Lawson*, 461 U.S. 352, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983). The defendant submits that the statutory language in question is unconstitutional under both prongs of the Supreme Court's test for vagueness.

### A. Notice of Prohibited Conduct

The defendant contends that the statutory language in question is too vague because it does not give a person of ordinary intelligence sufficient notice of what conduct is prohibited.

■ Section 16—1(a)(4)(A) of the Illinois theft statute states:
"(a) A person commits theft when he knowingly:
* * *
(4) Obtains control over stolen property knowing the property to have been stolen or *under such circumstances as would reasonably induce him to believe that the property was stolen* \*\*\*
\*\*\* and
(A) Intends to deprive the owner permanently of the use or benefit of the property[.]" (Emphasis added.) 720 ILCS 5/16—1(a)(4)(A) (West 2000).

■ The defendant was charged under the statute with obtaining possession "under such circumstances as would reasonably induce him to believe that the property was stolen." This language gave the defendant sufficient notice that his conduct was prohibited. Here, Woolam yelled at the defendant on the street at 4 a.m. and then asked if he would be interested in purchasing two electronic items. The defendant purchased the items for $380. The testimony at trial established that the value of these items was at least $1,250. When the defendant asked Woolam for a receipt, Woolam said that he did not want to put his name on anything.

Based on these facts, we believe that a person of ordinary intelligence presented with the computer and camera under these circumstances would reasonably be induced to believe that the merchandise had been stolen.

The defendant relies on the Colorado Supreme Court case of *People v. Johnson*, 193 Colo. 199, 564 P.2d 116 (1977), to support his vagueness argument. In *Johnson,* the court held that similar language in the Colorado theft statute was unconstitutional because it was overbroad. The court also approved a "subjective" rather than an "objective" test for the mental state at issue in the Colorado statute.

Since defendant in this case argues the statute is too vague, not overbroad, *Johnson* cannot be considered persuasive authority. Furthermore, Illinois courts have consistently used an objective test for the *mens rea* element of theft by receiving stolen property. See, for example, *People v. Josephine*, 165 Ill. App. 3d 762, 766, 520 N.E.2d 745, 748 (1987) (referring to an objective "reasonable mind" test); *People v. Baxa*, 50 Ill. 2d 111, 114-15, 277 N.E.2d 876, 878 (1971) (employing an objective "reasonable man" standard).

■ The defendant also asserts that the statutory language in question gives insufficient notice of prohibited conduct under certain hypothetical circumstances. However, because the statutory language does not involve first amendment rights, we need not consider whether the statute is vague under hypothetical circumstances. Rather, we

must determine whether the statutory language gives notice to a person of ordinary intelligence under the circumstances before us. See *Izzo*, 195 Ill. 2d 109, 745 N.E.2d 548.

## B. Arbitrary and Discriminatory Enforcement

■ The defendant also contends that the statutory language in question permits or invites arbitrary and discriminatory enforcement by the police.

When a criminal statute fails to provide standards regulating the exercise of its discretion, it permits or encourages arbitrary and discriminatory enforcement by the police. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972). The issue is whether the statute provided sufficient standards under the facts of this case. See *Izzo*, 195 Ill. 2d 109, 745 N.E.2d 548.

We believe that the statutory language in question provided the police with a sufficient standard to regulate their discretion. The police had to seek a person who knowingly received stolen property under a carefully controlled standard, that is, circumstances that would reasonably induce a person of ordinary intelligence to believe that the property was stolen.

In this case, the police were told that expensive electronic equipment had been stolen from an office. They learned from the defendant's girlfriend that the stolen items might be at the defendant's residence. When the police went to his house and knocked on the door, an officer then saw a man come out of the bedroom window, crouch down and walk between the bushes and the house. After being confronted by his girlfriend's statement, the defendant led the police to the stolen items. The defendant told the police how he purchased the items. We have already found that these circumstances would induce a reasonable person of ordinary intelligence to believe that the items were stolen property. Applying this standard, we hold that the statute did not permit or invite the police to arbitrarily and indiscriminately enforce a theft by receiving stolen property.

## CONCLUSION

The language in section 16—1(a)(4)(A) of the Illinois theft statute, "under such circumstances as would reasonably induce him to believe that the property was stolen," is not unconstitutionally void for vagueness.

The judgment of the McDonough County circuit court is affirmed.

Affirmed.

McDADE, P.J., and HOLDRIDGE, J., concur.