Docket Nos. 103616, 103856, 103857 cons.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DERRICK CARPENTER, Appellee.–THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. SERGIO GARIBALDI, Appellee.–THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. IGNACIO MONTES-MEDINA, Appellee.

*Opinion filed April 17, 2008.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Fitzgerald and Garman concurred in the judgment and opinion.

Justice Kilbride specially concurred, with opinion, joined by Justices Freeman and Burke.

Justice Burke specially concurred, with opinion, joined by Justices Freeman and Kilbride.

## OPINION

Following a bench trial in the circuit court of Cook County, defendant, Derrick Carpenter, was found guilty of having a false or secret compartment in a motor vehicle, in violation of section 12–612 of the Illinois Vehicle Code (Code). 625 ILCS 5/12–612 (West 2004). Defendant was subsequently sentenced to two years' imprisonment.

On appeal, the appellate court declared section 12–612 unconstitutional as violative of substantive due process guarantees, concluding that the statute sweeps too broadly, potentially encompassing innocent conduct. *Carpenter*, 368 Ill. App. 3d 288. This court granted the State's petition for leave to appeal as a matter of right pursuant to Supreme Court Rule 612(b) (210 Ill. 2d R. 612(b) (adopting civil appeal Rule 317 in criminal cases)). The cause was docketed as No. 103616.

Thereafter, in reliance upon the published opinion in *Carpenter*, the circuit court of Grundy County separately dismissed single-count indictments against defendants Sergio Garibaldi and Ignacio Montes-Medina, both of which charged offenses under section 12–612(a) of the Code. Pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603), the State appealed both cases directly to this court (Nos. 103856 and 103857). As they present common issues, all three cases have been consolidated for disposition.

Prior to oral argument, the State filed a motion for vacatur and remand, based upon our decision in *In re E.H.*, 224 Ill. 2d 172 (2006). Relying upon *E.H.*, the State contended that the lower courts in these consolidated cases improperly declared section 12–612 unconstitutional without first addressing alternative grounds that could have resolved the cases. We denied the State's motion on May 15, 2007, and the causes proceeded to oral argument.

Before this court, the State argues that "the lower court orders should be vacated and the cases remanded for consideration of nonconstitutional grounds that were not addressed by those courts." Alternatively, the State contends that "the false or secret compartment statute *** is constitutional on its face."

## STATUTE INVOLVED

Section 12–612 of the Code provides in pertinent part:

"(a) Offenses. It is unlawful for any person to own or operate any motor vehicle he or she knows to contain a false or secret compartment. It is unlawful for any person to knowingly install, create, build, or fabricate in any motor vehicle a false or secret compartment.

(b) Definitions. For purposes of this section, a 'false or secret compartment' means any enclosure that is intended and designed to be used to conceal, hide, and prevent discovery by law enforcement officers of the false or secret compartment, or its contents, and which is integrated into a vehicle. For purpose[s] of this Section, a person's intention to use a false or secret compartment to conceal the contents of the compartment from a law enforcement officer may be inferred from factors including, but not limited to, the discovery of a person, firearm, controlled substance, or other contraband within the false or secret compartment, or from the discovery of evidence of the previous placement of a person, firearm, controlled substance, or other contraband within the false or secret compartment." 625 ILCS 5/12–612(a), (b) (West 2004).

## BACKGROUND
### Case No. 103616

Defendant Carpenter was charged by information with the offense of "false or secret compartment in a motor vehicle" in that he "owned or operated a motor vehicle *** which he knew to contain a secret compartment," in violation of section 12–612 of the Vehicle Code (625 ILCS 5/12–612 (West 2004)). The following evidence was adduced at defendant's bench trial.

Chicago police officer Edmund Szudy and his partner, Erin Petrulis, were on routine patrol when they were flagged down by Sergeant Sherry. Sherry informed Szudy that he had received a complaint from a female regarding two men who had allegedly tried to lure her into a white van near the intersection of 39th Street and King Drive. According to the unidentified female, a firearm was displayed during the incident. A hearsay objection was interposed to the foregoing evidence, and it was ultimately admitted for the limited purpose of showing why the officers went to the named intersection, rather than for the truth of the out-of-court statement. In response to that information, Szudy and Petrulis drove to a motel parking lot near 39th Street and King Drive and saw a white van matching Sergeant

-3-

Sherry's description. Defendant was sitting in the driver's seat of the van and defendant's brother was sitting in the passenger's seat.

As Szudy approached the van on the passenger side, he saw defendant reach toward the dashboard as if to "shut something or grab something." At that point, Szudy drew his gun and ordered defendant to raise his hands and step out of the vehicle. When Szudy looked into the van, he saw the butt end of what appeared to be a handgun sticking out from an open compartment in the dashboard. While Szudy and Petrulis placed defendant and his brother in custody, another officer, who had responded in a backup capacity, retrieved the gun from the open compartment and determined it was "just a BB gun." An owner's manual for the vehicle was also found inside the compartment. No contraband, drugs, or firearms were recovered from the vehicle. The compartment was open when Szudy first approached defendant's vehicle, and upon further inspection, Szudy was unable to find any mechanism controlling its operation.

After Szudy's testimony, it was stipulated that defendant was the owner of the vehicle. In addition, the State introduced, without objection, three photographs of the van's interior, two showing the compartment with its lid open, and one showing it with its lid closed. Also admitted was a photograph of the BB gun found in defendant's vehicle. Thereafter, the State rested, and a motion for directed verdict was made and denied.

Defendant testified that he purchased the van three weeks before his arrest, and he had not made any changes to it. There was no air bag in the compartment when he purchased the van. Defendant said he used the compartment "to keep important papers in there and the manual that came to [*sic*] the car." On cross-examination, defendant admitted that he also put his BB gun in the compartment. Defendant initially stated that he knew the compartment was where the air bag was supposed to be. When asked again if he knew the compartment was supposed to contain an air bag, he responded, "Not really."

On the foregoing evidence, the trial court found defendant guilty. The court subsequently sentenced defendant to two years' imprisonment.

Defendants Sergio Garibaldi and Ignacio Montes-Medina were ultimately charged by separate indictments filed in the circuit court of Grundy County with violations of section 12–612 of the Vehicle Code (625 ILCS 5/12–612 (West 2004)). The indictments arose out of a single incident occurring on February 13, 2006. One indictment charged that defendant Garibaldi, on that date, "operated" a 2001 Ford Focus that "he knew contained a secret compartment." The other indictment charged that defendant Montes-Medina "owned" a 2001 Ford Focus that "he knew contained a secret compartment." Both defendants initially filed motions to quash arrest and suppress evidence, and later filed motions to dismiss based on the appellate court's finding in *Carpenter* that section 12–612 is unconstitutional. A copy of *Carpenter* was attached to defendants' motions to dismiss.

On November 6, 2006, a hearing was held on those motions. No evidence was adduced at that hearing, but the parties referred to testimony that had been given at a preliminary hearing, noting that a large amount of currency had been found in the air bag compartment of defendants' vehicle and that the compartment had been modified with, among other things, an electronic device to open and close the cover.

The circuit court ultimately granted defendants' motions to dismiss. The judge concluded that he could not rule contrary to the holding in *Carpenter*, even if he were otherwise disposed. He stated: "[S]o I'm going to show the motion granted. *** I believe I'm bound by the holding in *Carpenter*, which I believe is sufficiently similar to this." The order initially entered by the circuit court states that the court "must follow the decision of the appellate court" in *Carpenter*; and concludes, "it is therefore the finding of this Court that the statute in question is unconstitutional in that it violates due process." On November 28, 2006, the Attorney General filed a motion to amend the circuit court's order in order to comply with Supreme Court Rule 18 (210 Ill. 2d R. 18 (eff. September 1, 2006)). The amended order states that the circuit court declared the statute unconstitutional "in its entirety," that the statute violates the "due process clauses of the U.S. and Illinois constitutions for being overly broad," that the statute "is unconstitutional facially," that it "cannot reasonably be construed in a manner that would preserve its validity," and that the "finding of

unconstitutionality is necessary to the Court's judgment dismissing the case, and such judgment cannot rest upon an alternative ground." The court entered the amended order on November 28, 2006, upon its presentation by the prosecutor, without further elaboration as to the basis for its ruling.

As previously noted, all three cases are before this court on State appeals, and they have been consolidated for disposition.

## ANALYSIS

Initially, the State contends that "the lower court orders should be vacated and the cases remanded for consideration of nonconstitutional grounds that were not addressed by those courts." The State notes that defendant Carpenter had presented other, unresolved issues on appeal, *i.e.*, a challenge to the sufficiency of the evidence and an argument that the trial court had denied him due process in entering a finding of guilt based upon facts not supported by the record. The State points out that defendants Garibaldi and Montes-Medina had pending, unresolved motions to quash arrest and suppress evidence at the time charges against them were dismissed.

Defendants counter that the alternative issues to which the State refers are themselves of constitutional magnitude. Carpenter argues that his "reasonable doubt and due process arguments are inextricably intertwined with arguments relating to the constitutionality of the statute under which he was convicted." He submits, in order to determine whether he was properly convicted of the crime charged, the appellate court had to necessarily first consider what conduct, if any, the statute criminalized and whether the statute's proscription of the conduct was constitutional. Defendants Garibaldi and Montes-Medina note that the circuit court, in their cases, was bound by the appellate court's decision in *Carpenter*, once that decision was rendered.

The State responds to defendant Carpenter's argument by pointing out that, even though the other unresolved issues in these cases implicate constitutional rights, they do not involve the constitutionality of an Illinois statute. Therefore, the State argues, those issues should be addressed first. The State observes that if a court of review court were to find the evidence in Carpenter's case insufficient to convict,

the conviction would be reversed and there would be no need to review the constitutionality of section 12–612. As for defendants Garibaldi and Montes-Medina, the State's argument suggests that they were obligated to obtain a ruling on their motions to suppress before they could seek dismissal of the charges against them based on the statute's invalidity. We reject that suggestion.

As defendants Garibaldi and Montes-Medina point out, the circuit court presiding over their cases was bound to follow the appellate court's holding in *Carpenter*. It is "fundamental in Illinois that the decisions of an appellate court are binding precedent on all circuit courts regardless of locale." *People v. Harris*, 123 Ill. 2d 113, 128 (1988). Therefore, until this court says otherwise, an applicable appellate court decision must be followed by the circuit courts of this state. See *Harris*, 123 Ill. 2d at 129. Thus, the circuit court of Grundy County was obliged to follow the holding of the appellate court in *Carpenter*, whether or not it agreed with that holding.

The State's interpretation of cases such as *Mulay v. Mulay*, 225 Ill. 2d 601 (2007), *People v. Hampton*, 225 Ill. 2d 238, 243-44 (2007), *In re E.H.*, 224 Ill. 2d 172 (2006), and *People v. Lee*, 214 Ill. 2d 476 (2005), would essentially require that circuit courts violate the rights of those charged with criminal offenses and engage in wasteful procedural and analytical practices. The absurdity of requiring defendants Garibaldi and Montes-Medina to litigate a motion to suppress, and obtain a ruling thereon, as a prerequisite to obtaining dismissal of charges based upon the holding in *Carpenter* should be apparent. There was an appellate court precedent, directly on point, holding section 12–612 unconstitutional. Yet, the State would require the defendants to not only litigate the motions to suppress–as the motions might have been granted–but also, presumably, undergo the rigors of a criminal trial–as they might have been acquitted. Under either of these scenarios, the circuit court could have avoided ruling upon the constitutionality of the statute, but at the expense of defendants' constitutional rights. We cannot emphasize enough: these are individuals charged with felonies. The criminal statutes of this state are not so sacrosanct, nor is our pursuit of judicial economy so preeminent, that we will endorse the trampling of citizens' rights in pursuit of either. A citizen should not have to endure or defend a

felony prosecution premised upon an unconstitutional statute. Our precedents do not hold otherwise.

*Hampton*, *E.H.*, and *Lee* addressed the sequence of *appellate* analysis, so those decisions are not even pertinent to the appropriate *circuit court* action in the cases of defendants Garibaldi and Montes-Medina. While *Mulay* did address the proper procedure in the circuit court, requiring the circuit court to first rule upon the "legal insufficiency"of a petition before deciding a constitutional issue, we find two bases for distinguishing *Mulay.* First, in *Mulay*, there was no clear precedent holding a statute unconstitutional, as was the case here. Thus, there was no controlling authority that the circuit court was compelled to follow. Second, we believe a different rule must obtain where, as here, defendants are the subjects of criminal prosecutions, with all the serious consequences that entails, and the statute in question sets forth the offense upon which the prosecution is founded.

In a somewhat analogous context–a determination of whether the mere prospect of criminal prosecution presents a case or controversy for purposes of justiciability under article III of the United States Constitution–the United States Supreme Court has taken a position diametrically opposed to the construction of our jurisprudence which the State now urges. In *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 60 L. Ed. 2d 895, 99 S. Ct. 2301 (1979), the plaintiffs challenged the constitutionality of the Arizona Agricultural Employment Relations Act, arguing, *inter alia*, that the Act required them to curtail the exercise of their first amendment rights if they were to avoid criminal prosecution. The district court declared the statute unconstitutional and enjoined its enforcement. On appeal to the Supreme Court, the defendant-appellees maintained, *inter alia*, that there was no case or controversy because the criminal penalty provision had not been applied and might never be applied. See *Babbitt*, 442 U.S. at 302, 60 L. Ed. 2d at 908, 99 S. Ct. at 2310. The Supreme Court rejected the State's position, stating, "when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative a plaintiff need not 'first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute.' " *Babbitt*, 442 U.S. at 302, 60 L. Ed. 2d at 909, 99 S. Ct. at

2310-11, quoting *Steffel v. Thompson*, 415 U.S. 452, 459, 39 L. Ed. 2d 505, 514, 94 S. Ct. 1209, 1216 (1974).

The defendants in this case were actually charged under the statute in question–a statute which a superior court had held unconstitutional–and they were thus forced to defend against felony charges. Our jurisprudence, like that of our federal counterparts, does not require criminal defendants to pursue other pretrial alternatives as a prerequisite to challenging the constitutionality of the statute under which they are charged; that is particularly true where a court of review has declared the statute unconstitutional. As we noted in *People v. Wright*, 194 Ill. 2d 1 (2000), "if a statute creating an offense is unconstitutional, it is considered void *ab initio*." *Wright*, 194 Ill. 2d at 24, citing *People v. Zeisler*, 125 Ill. 2d 42, 46 (1988). Defendants Garibaldi and Montes-Medina were not required to pursue other procedural alternatives prior to litigating their motions to dismiss, based upon the appellate court's decision in *Carpenter.*

We turn now to the State's contention that the appellate court's judgment in *Carpenter* should be vacated and the cause remanded for consideration of "nonconstitutional" grounds that were not addressed by that court. As the State notes, defendant Carpenter had presented other, unresolved issues on appeal, *i.e.*, a challenge to the sufficiency of the evidence and an argument that the trial court had denied him due process in entering a finding of guilt based upon facts not supported by the record. This portion of the State's argument calls into question the proper sequence of *appellate* analysis, a matter this court recently addressed in *Hampton*, *E.H.*, *Lee*, and *People v. Stechly*, 225 Ill. 2d 246 (2007). The State cites *Hampton*, *E.H.*, and *Lee* in support of its position that the appellate court in *Carpenter* should have first addressed Carpenter's reasonable doubt argument and his contention that the trial court had denied him due process in entering a finding of guilt based upon facts not supported by the record.

We find our decision in *Lee* particularly instructive. Lee was arrested for violating a Joliet drug-loitering ordinance. He was subsequently found to be in possession of drugs, and he was ultimately prosecuted for possession of controlled substances and intent to deliver. Prior to trial, he filed and litigated a motion to quash arrest and suppress evidence, arguing that there was no probable cause for

his arrest. After a suppression hearing, the circuit court denied defendant's motion, and the ensuing jury trial resulted in his conviction. *Lee*, 214 Ill. 2d at 478-81.

A divided panel of the appellate court reversed defendant's convictions, holding that the Joliet drug-loitering ordinance was facially unconstitutional based on vagueness. *People v. Lee*, 345 Ill. App. 3d 782, 787-88 (2004). Concurring in the judgment, Presiding Justice Holdridge opined that the ordinance was not unconstitutionally vague on its face. However, he was of the opinion that the police lacked probable cause to arrest defendant. Therefore, Justice Holdridge agreed with the appellate court majority that defendant's convictions should be reversed. *Lee*, 345 Ill. App. 3d at 788 (Holdridge, P.J., specially concurring). This court allowed the State's petition for leave to appeal as a matter of right (134 Ill. 2d R. 317).

Although we found "the constitutional question" sufficient for this court to review the appellate judgment as a matter of right, we ultimately determined that the "appellate court's invalidation of the ordinance was erroneous," as it was it was "not necessary to determine the constitutionality of the *** ordinance." *Lee*, 214 Ill. 2d at 482. We reached that result by first determining whether the arresting officers had probable cause to arrest defendant for violating the ordinance, concluding in the end that they did not. *Lee*, 214 Ill. 2d at 482-85. As we acknowledged, that analysis itself entailed the consideration and resolution of a constitutional question:

> "Both the United States and Illinois Constitutions protect individuals from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6. An arrest without probable cause or a warrant based thereon violates these constitutional provisions." *Lee*, 214 Ill. 2d at 484.

Thus, this court's analysis in *Lee* demonstrates that a court of review should consider the constitutionality of a statute as a matter of last resort, only after the resolution of any other nonconstitutional and constitutional grounds for disposing of the case. *Lee*, 214 Ill. 2d at 482-85. Reasonable doubt is a matter of constitutional magnitude. "The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' "

-10-

*People v. Cunningham*, 212 Ill. 2d 274, 278 (2004), quoting in part *In re Winship*, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1073 (1970). Consequently, the appellate court should have first determined whether the State proved defendant Carpenter guilty of violating section 12–612 of the Vehicle Code beyond a reasonable doubt.

However, as *Lee* makes clear, we may choose to address issues ourselves, rather than remand them to the appellate court, where the appellate court's analysis has prematurely reached the question of a statute's constitutionality. We choose to do so in this case. Moreover, in the end, because Carpenter's case is consolidated with those of Garibaldi and Montes-Medina, we will be required to address the constitutionality of the statute in any event.

Consequently, we will first briefly review the evidence adduced at Carpenter's trial–in compliance with the analytical "flow chart" applicable to the circumstances and procedural posture of his case (see generally *E.H.*, 224 Ill. 2d at 179-89)–to determine whether it sufficed to prove defendant Carpenter guilty of violating section 12–612 of the Code beyond a reasonable doubt. The oft-stated standard we employ is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Cunningham*, 212 Ill. 2d at 278.

Defendant Carpenter was charged with the offense of "false or secret compartment in a motor vehicle" in that he "owned or operated a motor vehicle *** which he knew to contain a secret compartment." The statute defines a "false or secret compartment" in these terms: "any enclosure that is intended *and designed* to be used to conceal, hide, and prevent discovery by law enforcement officers of the false or secret compartment, or its contents, and which is integrated into a vehicle." (Emphasis added.) 625 ILCS 5/12–612(b) (West 2004).

We find the evidence adduced at trial insufficient to sustain a conviction for the offense charged. It was stipulated that defendant owned the vehicle in question. Beyond that, however, the evidence was insufficient to establish that the compartment was "false or secret," *i.e.*, "intended and designed to be used to conceal, hide, and prevent discovery by law enforcement officers of the false or secret compartment, or its contents." The statute requires that the

compartment be both intended "and designed" to be used to conceal, hide, and prevent discovery of the compartment or its contents. There is no question that the compartment was designed to contain an air bag. The State presented no evidence to the contrary; nor did it adduce evidence indicating that defendant had modified the compartment in any way. Defendant testified that the air bag had already been removed when he purchased the vehicle. No evidence was adduced to contradict that assertion. The State's evidence fails on this basis alone; however, we also note, in passing, that the evidence was insufficient, in a practical sense, to establish defendant's intent to use the compartment as a "false or secret" compartment. The arresting officer testified that the compartment was open when he approached defendant's vehicle and he failed to cite any measures defendant had taken to prevent its discovery.

Thus, the evidence was insufficient to establish defendant Carpenter's guilt of the offense charged beyond a reasonable doubt. The appellate court, in *Carpenter*, should have addressed the reasonable doubt issue first, before it addressed the constitutionality of the statute. Had it done so, it would not have had to address the statute's constitutionality. That sequence of review was mandated by our jurisprudence. However, as will appear hereafter, the appellate court's holding with respect to the constitutionality of the statute was correct nonetheless.

We turn to the cases of defendants Garibaldi and Montes-Medina. It is clear from the transcript of the hearing on defendants' motions to dismiss that the circuit court felt compelled to find the statute unconstitutional, and dismiss the charges against the defendants, based solely upon the holding of the appellate court in *Carpenter*. The court's original order of November 6, 2006, so indicates. It is unclear, however, whether the circuit court independently assessed the reasoning of *Carpenter* and adopted it in the circuit court's subsequent findings, as set forth in the court's amended order of November 28, 2006, or whether those findings simply reflect what was done in *Carpenter*, *i.e.*, finding the statute overly broad and thus violative of due process guarantees. The distinction has some significance in the context of this consolidated appeal because our discussion heretofore indicates that the appellate court in *Carpenter* reached the constitutionality of the statute unnecessarily. Thus, if we

were not otherwise compelled to reach the constitutionality of the statute, and if the circuit court of Grundy County felt bound to hold the statute unconstitutional solely on the basis of the appellate court's decision in *Carpenter*, then one might argue that remand of these cases would be appropriate to allow for an independent evaluation of the statute's constitutionality by the circuit court. Since the circuit court's order makes the requisite findings, we can presume the trial court meant what it said in the order. Therefore, we will address the constitutionality of the statute in these cases.

The constitutionality of a statute is reviewed *de novo*. *People v. Jones*, 223 Ill. 2d 569, 596 (2006). Statutes are presumed constitutional, and the party challenging the constitutionality of a statute has the burden of establishing its invalidity. *People v. Lantz*, 186 Ill. 2d 243, 254 (1999). The legislature has wide discretion to establish penalties for criminal offenses, but that discretion is limited by the constitutional guarantee that a person may not be deprived of liberty without due process of law. *People v. Wright*, 194 Ill. 2d 1, 24 (2000), citing *In re K.C.*, 186 Ill. 2d 542, 550 (1999). When legislation does not affect a fundamental constitutional right, the test for determining whether it complies with substantive due process requirements is the rational basis test. *Wright*, 194 Ill. 2d at 24. A statute will be upheld under that test where "it 'bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective.' " *Wright*, 194 Ill. 2d at 24, quoting *People v. Adams*, 144 Ill. 2d 381, 390 (1991).

Thus, we must first ascertain the statute's public purpose so that we may determine whether its provisions reasonably implement that purpose. "The language of a statute is the best indication of the legislature's intent and the statute's purpose." *People v. Hill*, 199 Ill. 2d 440, 456 (2002), citing *People v. Lombardi*, 184 Ill. 2d 462, 477 (1998).

Section (a) of the false or secret compartment statute makes it unlawful to own or operate a motor vehicle that the individual knows to contain a false or secret compartment and to knowingly install, create, build, or fabricate such a compartment. This section does not reveal the statute's purpose. Section (b), however, which, *inter alia*, defines the term "false or secret compartment," reveals that the

legislature was concerned with deterring and punishing those who would conceal illegal and dangerous items in such a compartment. This section notes that secret compartments might be used to conceal "a person, firearm, controlled substance, or other contraband" from the police. 625 ILCS 5/12–612(b) (West 2004). The mention of firearms reveals a specific concern for officer safety.

As the appellate court noted, these purposes are consistent with the comments made by three legislators who spoke to the purpose of the statute during debates: one senator who indicated that the objective of the legislation was to protect police from concealed firearms; and two representatives who suggested that the bill was meant to punish those who possessed illegal contraband. See 368 Ill. App. 3d at 294-95.

Assuming that the purpose of the statute is the laudable goal of protecting police and punishing those who hide guns and illegal contraband from officers, we must next consider whether " 'the means adopted are a reasonable method of accomplishing the desired objective.' " *Wright*, 194 Ill. 2d at 24, quoting *People v. Adams*, 144 Ill. 2d 381, 390 (1991). We hold it is not.

The statute potentially criminalizes innocent conduct, as it visits the status of a felon upon anyone who owns or operates a vehicle he or she knows to contain a false or secret compartment, defined as one intended and designed to conceal the compartment or its contents from law enforcement officers. The contents of the compartment do not have to be illegal for a conviction to result. In these consolidated cases, there was in fact nothing illegal found within the compartments. As in *Wright*, the statute in question does not contain a reasonable means of preventing the targeted conduct, and it therefore violates due process protections. See *Wright*, 194 Ill. 2d at 28 ("Because section 5–401.2 potentially subjects *** innocent conduct to such a severe penalty, we find that it does not contain a reasonable means of preventing the trafficking of stolen vehicles and parts. *** Accordingly, we hold that section 5–401.2 violates due process protections").

The State submits that the intent to conceal the compartment or its contents from law enforcement officers suggests a criminal purpose and, in any event, we should construe the statute so as to require a criminal purpose as an element of the offense.

We reject the notion that the intent to conceal something from law enforcement officers necessarily entails illegal conduct. The intent to conceal something from the view of the general public subsumes an intent to conceal from the subset of the public comprised of law enforcement officers. Just as citizens are not required to display their worldly possessions to the general public, neither are they required to exhibit them for the plain view of law enforcement. As the appellate court noted in *Carpenter*, "an owner or driver who uses his concealed compartment to keep legally possessed items from view of law enforcement officers has no criminal purpose. Whether the item is cash, jewelry, a risque magazine, a confidential file, or a BB gun, the owner or driver has the right to keep it from prying eyes–whether or not those eyes are official." 368 Ill. App. 3d at 295. Citizens have recognized expectations of privacy in their belongings and the containers in which those belongings are kept. See generally *Bond v. United States*, 529 U.S. 334, 338, 146 L. Ed. 2d 365, 370, 120 S. Ct. 1462, 1465 (2000); *New Jersey v. T.L.O.*, 469 U.S. 325, 337-38, 83 L. Ed. 2d 720, 732, 105 S. Ct. 733, 740-41 (1985) (" '[T]he Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view' "), quoting *United States v. Ross*, 456 U.S. 798, 822-23, 72 L. Ed. 2d 572, 592, 102 S. Ct. 2157, 2172 (1982); *MacWade v. Kelly*, 460 F.3d 260, 272-73 (2d Cir. 2006) (same).

Given the statutory language employed here, we decline the State's invitation to construe the statute so as to require a criminal purpose as an element of the offense. Section 12–612 already contains *two* mental-state elements: knowledge and intent. In such circumstances, this court has declined to read a criminal purpose into a statute. See *Wright*, 194 Ill. 2d at 29-30; *People v. Zaremba*, 158 Ill. 2d 36 (1994); *People v. Hamm*, 149 Ill. 2d 201 (1992); *People v. Wick*, 107 Ill. 2d 62 (1985). As this court explained in *Wright*:

"[S]ection 5–401.2 does not lack a mental state element. Section 5–401.2(i) expressly provides that the mental state for the offense of failure to keep records is knowledge. When a statute is unambiguous, it must be enforced as enacted, and a court may not depart from its plain language by reading into it exceptions, limitations, or conditions not expressed by the

-15-

legislature. [Citation.] The responsibility for the wisdom or justice of legislation rests with the legislature, and courts may not rewrite statutes to make them consistent with the court's idea of orderliness and public policy. [Citations.] Consistent with these principles, in *Zaremba*, *Wick*, and *Hamm*, we did not read the mental state of knowledge plus criminal purpose into the statutes at issue because they expressly provided knowledge as the mental state. Instead, we held that these statutes were invalid. We must do the same in this case." *Wright*, 194 Ill. 2d at 29-30.

*Wright* specifically distinguished *People v. Tolliver*, 147 Ill. 2d 397 (1992), noting: "In *Tolliver*, we were able to imply the mental state of knowledge plus criminal purpose as an element of section 4–104(a)(2) because that provision contained no mental state." *Wright*, 194 Ill. 2d at 29. The *Wright* reasoning applies in this case.

The State notes that *Wright* failed to acknowledge *People v. Bailey*, 167 Ill. 2d 210 (1995). According to the State, *Bailey* "demonstrates that a statute may be construed to require a criminal purpose beyond the absolute liability context," *i.e.*, where no mental state is included in the statute. The stalking statute in *Bailey* provided in pertinent part:

"(a) A person commits stalking when he or she transmits to another person a threat with the intent to place that person in reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint, and in furtherance of the threat knowingly does any one or more of the following acts on at least 2 separate occasions:

(1) follows the person, other than within the residence of the defendant;

(2) places the person under surveillance by remaining present outside his or her school, place of employment, vehicle, other place occupied by the person, or residence other than the residence of the defendant." 720 ILCS 5/12–7.3 (West 1992).

In *Bailey*, defendants argued that the statute was unconstitutional because it failed to contain the language "without lawful authority."

They contended that the absence of such language made innocent conduct unlawful, violating due process guarantees. *Bailey*, 167 Ill. 2d at 224.

This court interpreted the statute "as proscribing only conduct performed 'without lawful authority.' " *Bailey*, 167 Ill. 2d at 224. Notably, this court explained: "We do not believe threatening a person with the requisite intent and in furtherance of the threat following or placing a person under surveillance without lawful authority involves any 'innocent conduct.' *** Further, the fact that the statutes at issue here can be interpreted to punish only unlawful conduct distinguishes this case from those where such an interpretation was not possible." *Bailey*, 167 Ill. 2d at 225.

Indeed, threats made with the intent to place a person in "reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint" could hardly be deemed "innocent conduct" under any rational interpretation of the phrase and, coupled with the "knowing" conduct prohibited in subsections (a)(1) and (a)(2), could in some instances border on assault. See 720 ILCS 5/12–1 (West 2006) ("A person commits an assault when, without lawful authority, he engages in conduct which places another in reasonable apprehension of receiving a battery"). Given the language employed in the stalking statutes, it was probably not necessary to interpret the statutes as if they contained the phrase "without lawful authority." The statute already contained a requirement of "knowing" conduct in furtherance of a clearly culpable objective, *i.e.*, the intent to place another person in "reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint." See 720 ILCS 5/12–7.3 (West 1992). In any event, we believe the holding of *Bailey* is limited to its facts.

The statute at issue in *Bailey* is certainly not comparable to the statute before us in this case, where the mere intent to conceal an empty compartment, or, alternatively, anything in it (regardless of its legality), constitutes an offense. If the intent of the legislature *was* to punish those who conceal firearms or contraband in false or secret compartments, it would seem that the rational approach might have been to punish–via an additional felony offense–those who actually did that.

For the foregoing reasons, we hold that section 12–612 of the Code is facially invalid on due process grounds. The evidence would have been insufficient to convict defendant Carpenter under the statute in any event. Therefore, the judgment of the appellate court is affirmed (on either basis) in No. 103616. The judgment of the circuit court of Grundy County is affirmed in Nos. 103856 and 103857.

*No. 103616–Appellate court*
*judgment affirmed;*
*Nos. 103856 & 103857–Circuit court*
*judgment affirmed.*

JUSTICE KILBRIDE, specially concurring:

I write separately because, while I concur in the result reached, I believe the opinion has unnecessarily attempted to create a new general rule for the order of addressing constitutional and nonconstitutional issues in our criminal trial courts. This novel rule not only runs counter to this court's long-established principles, as repeatedly reiterated in *Mulay v. Mulay*, 225 Ill. 2d 601 (2007) (citing the list of cases noted in *In re E.H.*), *People v. Hampton*, 225 Ill. 2d 238 (2007), *In re E.H.*, 224 Ill. 2d 172 (2006) (including an extensive list of cases dating back to 1910), and *People v. Lee*, 214 Ill. 2d 476 (2005), but it also reaches this new rule without the benefit of direct argument by the parties, supporting legal precedent, or independent analysis. Thus, I cannot join in that portion of the opinion.

In its initial review of the Garibaldi and Montes-Medina cases, the opinion correctly notes that *Mulay* "addressed[ed] the proper procedure in the circuit court," requiring the court to dispose of any nonconstitutional issues before resolving constitutional matters. Slip op. at 8. The opinion then properly distinguishes *Mulay* from the instant case because, "in *Mulay*, there was no clear precedent holding a statute unconstitutional, as was the case here." Slip op. at 8. As the opinion later explains, the rationale for this distinction is that " 'if a statute creating an offense is unconstitutional, it is considered void *ab initio*.' " Slip op. at 9, quoting *Wright*, 194 Ill. 2d at 24. Thus, after the appellate court in *Carpenter* found section 12–612

-18-

unconstitutional, the trial court was bound by that ruling. Slip op. at 7, citing *People v. Harris*, 123 Ill. 2d 113, 128-29 (1988). Charged with violations of a section held to be unconstitutional, both Garibaldi and Montes-Medina filed motions to dismiss based on *Carpenter*. Under those circumstances, the trial court could not have properly continued the criminal proceedings based on a statute that had been declared void *ab initio*. In contrast, in *Mulay*, "there was no controlling authority that the circuit court was compelled to follow." Slip op. at 8. Thus, the procedures properly outlined in *Mulay* were not applicable to the cases of defendants Garibaldi and Montes-Medina.

Rather than end that portion of its analysis and immediately proceed to the State's contention that *Carpenter* should be vacated, however, the opinion attempts to distinguish *Mulay* on a second, and much more problematic, basis in *dicta*. Indeed, the opinion unexpectedly announces "a different rule" in criminal cases involving challenges to the constitutionality of the charging statutes. Slip op. at 8. The opinion appears to rely on two bases for its new rule: (1) the "serious consequences" entailed in criminal prosecutions and (2) the United States Supreme Court's decision in *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 60 L. Ed. 2d 895, 99 S. Ct. 2301 (1979). Slip op. at 8. Neither basis justifies the current announcement of "a different rule" in criminal cases, and the surrounding *dicta* will lead to confusion on the applicability and scope of that rule.

While criminal prosecutions undoubtedly entail "serious consequences," the opinion does not cite any legal precedent to support the imposition of a new rule for the review of constitutional and nonconstitutional issues in a criminal trial. The only case cited is *Babbitt*, where the Supreme Court directly addresses the *justiciability of a First Amendment challenge* made by federal court plaintiffs *who had not yet been charged* under the challenged statute. Those plaintiffs sought "to secure a declaration of the unconstitutionality of various sections of the [Arizona Agricultural Employment Relations Act], as well as of the entire Act, and an injunction against its enforcement." *Babbitt*, 442 U.S. at 293, 60 L. Ed. 2d at 903, 99 S. Ct. at 2306. As appellees, the plaintiffs argued, *inter alia*, that "*to

*avoid criminal prosecution* they must curtail their consumer [publicity campaigns], and thus forgo full exercise of what they insist are their First Amendment rights. It is urged, accordingly, that their challenge to the limitation on consumer publicity plainly poses an actual case or controversy." (Emphasis added.) *Babbitt*, 442 U.S. at 301, 60 L. Ed. 2d at 908, 99 S. Ct. at 2310. In resolving these claims, the Court squarely addressed whether the plaintiffs' first amendment challenges to the likely future application of the Act sufficiently presented an actual case or controversy to be justiciable.

That scenario bears no resemblance to the cases of defendants Garibaldi and Montes-Medina. *Garibaldi* and *Montes-Medina* involved ongoing criminal prosecutions based on past violations of the challenged statute. Thus, the Court's discussion about justiciability, the only issue decided in *Babbitt*, is inapposite in the instant cases. The discussion's complete inapplicability is manifested within the quote it cites in support, stating that " 'when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative a plaintiff *need not "first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute.*" ' " (Emphasis added.) Slip op. at 9, quoting *Babbitt*, 442 U.S. at 302, 60 L. Ed. 2d at 909, 99 S. Ct. at 2310-11, quoting *Steffel v. Thompson*, 415 U.S. 452, 459, 39 L. Ed. 2d 505, 514, 94 S. Ct. 1209, 1216 (1974). The quote is obviously directed toward the limited issue of whether the plaintiffs' constitutional challenge is justiciable and thus can even be heard by a federal district court. It has no application here because the defendants have *already* faced actual arrest and prosecution. Moreover, the constitutional challenges in the instant case arose only *after* the defendants were arrested and charged, unlike the anticipatory claims raised in *Babbitt*. Here, the question the opinion unnecessarily attempts to answer by creating its new rule in criminal cases is not *whether* the defendants may properly raise their constitutional challenges before the trial court but *when* they may do so. It is undisputed that Garibaldi and Montes-Medina have a right to challenge the constitutionality of section 12–612. The only issue that could remain is when the trial court should address those claims.

In this instance, however, it is improper for this court to address that issue because the trial court could not have properly gone forward with the criminal proceedings against Garibaldi and Montes-Medina after they filed their motions to dismiss based on our appellate court's holding in *Carpenter* that section 12–612 is unconstitutional on its face. Thus, the opinion unjustifiably delves into *dicta* when it announces its "different rule" to be applied in criminal trials. That announcement is not only purely advisory and unsupported by relevant precedent, but it is also likely to spawn extensive litigation over its actual scope and application due to its status as *dicta*. Thus, I cannot join that portion of the opinion.

In this case, we need not consider applying a "different rule" for the proper order for addressing constitutional and nonconstitutional challenges in our criminal trial courts. The parties have not fully briefed and argued the merits of each side, and the issue is not squarely before us. Accordingly, I respectfully specially concur in the majority opinion.


JUSTICES FREEMAN and BURKE join in this special concurrence.


JUSTICE BURKE, also specially concurring:

I agree with the majority's ultimate holding that the secret compartment statute, section 12–612 of the Illinois Vehicle Code (625 ILCS 5/12–612 (West 2004)), is unconstitutional in that it violates substantive due process. However, I find the analysis employed in reaching this conclusion to be confusing and, at times, incorrect. Accordingly, I cannot join fully in the opinion and specially concur.

In this appeal, the court addresses the consolidated cases of People v. Carpenter, No. 103616, People v. Garibaldi, No. 103856, and People v. Montes-Medina, No. 103857. Defendant Carpenter was found guilty of violating the secret compartment statute. On appeal, the appellate court reversed the conviction, ruling the statute unconstitutional because it violates substantive due process by sweeping too broadly and potentially encompassing innocent conduct. The State then petitioned to appeal that ruling as a matter of right

pursuant to Supreme Court Rule 612(b), which we granted. Subsequently, defendants Garibaldi and Montes-Medina were each charged, in separate cases, with violating section 12–612. In the circuit court they sought and obtained dismissal of the charges based on the ruling in *Carpenter*, 368 Ill. App. 3d 288. The State appealed the dismissals directly to this court, as permitted by Supreme Court Rule 603.

Before this court, the State's main argument is that the lower courts' orders should be vacated and remanded for consideration of nonconstitutional grounds that were not addressed by those courts. The State contends that in *Carpenter* the appellate court should have first considered whether there had been sufficient evidence to support the defendant's conviction, and that the circuit court in People v. Garibaldi and People v. Montes-Medina should not have dismissed the matters before ruling on the defendants' motions to quash arrest and suppress evidence.

Initially, this majority rejects the State's arguments with respect to the Garibaldi and Montes-Medina cases, recognizing that once the appellate court held the secret compartment statute unconstitutional in *Carpenter*, the circuit court was bound by that ruling and that it would be "absurd" to require them to litigate other matters before obtaining dismissal based on *Carpenter*. Slip op. at 7. Although this response is certainly sufficient to dispose of the State's arguments with respect to Garibaldi and Montes-Medina, the majority, nevertheless, goes on to engage in a long discussion which is confusing, at best, and incorrect at worst. As Justice Kilbride points out in his special concurrence, the majority alludes to creating a "different rule" (see slip op. at 20 (Kilbride, J., specially concurring)) for the treatment of criminal cases and supports this notion with a detailed discussion of *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 60 L. Ed. 2d 895, 99 S. Ct. 2301 (1979), a case that is wholly inapposite to the situation here.

I note, additionally, that despite repeated readings of the majority's opinion, I have been unable to discern exactly what this "different rule" might be. The majority concludes its discussion by stating: "Our jurisprudence, like that of our federal counterparts, does not require criminal defendants to pursue other pretrial alternatives as

-22-

a prerequisite to challenging the constitutionality of the statute under which they are charged; that is particularly true where a court of review has declared the statute unconstitutional." Slip op. at 9. However, this is not a new or different rule, but a statement of long-standing precedent. As the majority itself acknowledges, appellate court decisions have always been binding on circuit courts. *People v. Harris*, 123 Ill. 2d 113, 128 (1988). Confusion also stems from the fact that the majority's conclusion–that "Defendants Garibaldi and Montes-Medina were not required to pursue other procedural alternatives prior to litigating their motions to dismiss"–speaks to a *defendant's* ability to raise the issue of constitutionality, not the *court's* ability to reach the issue of constitutionality, which is the focus of the State's appeal.

The majority then turns to *Carpenter* and engages in a lengthy discussion to come to the already-settled rule–that a court of review should consider the constitutionality of a statute as a matter of last resort. The majority then concludes that the appellate court erred when it found section 12–612 unconstitutional because it did not first determine whether the State proved defendant Carpenter guilty of violating section 12–612 beyond a reasonable doubt. Although the majority, too, eventually addresses the constitutionality of the statute, it does so only after reviewing the evidence adduced at Carpenter's trial to determine whether it sufficed to prove defendant guilty of violating the statute.

In my view, the majority's analysis when reviewing the sufficiency of the evidence demonstrates the folly of engaging in this endeavor and underscores why the appellate court proceeded in the manner it did. In order to determine whether the State adduced sufficient evidence to convict defendant at trial, it is necessary to first decide the question of *what evidence* must be looked at to see whether it was sufficient. That inquiry can only be accomplished by construing the statute and, when the majority construes the statute, it reads into it a criminal-purpose requirement which is not in the language of the statute and which is precisely the infirmity complained of by defendant and found by the appellate court to render the statute violative of substantive due process.

I agree with Carpenter's argument that "reasonable doubt and due process arguments are inextricably intertwined with arguments relating to the constitutionality of the statute under which he was convicted" and that, in order to determine whether he was properly convicted of the crime charged, the appellate court had to necessarily first consider what conduct, if any, the statute criminalized and whether the statute's proscription of the conduct was constitutional. See slip op. at 6.

In sum, I join in the majority's holding that section 12–612 of the Vehicle Code is unconstitutional. However, based on the above, I would affirm the appellate court judgment in *Carpenter* in its entirety and reject the State's argument that the constitutionality of the statute should not have been reached by the lower court. Further, for the reasons stated in this special concurrence, I would affirm the circuit court orders in the Garibaldi and Montes-Medina cases.

JUSTICES FREEMAN and KILBRIDE join in this special concurrence.