R2026 IL App (2d) 250453
No. 2-25-0453
Opinion filed June 18, 2026

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

*In re* ESTATE OF KEVIN JOHN KOHNEN, Deceased

(Deborah Kohnen, Petitioner and Counterrespondent-Appellee, v. Ethan Kohnen and Jordan Aken, Respondents and Counterpetitioners-Appellants).

Appeal from the Circuit Court of McHenry County.
Honorable David R. Gervais, Judge, Presiding.
No. 23-PR-84

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1    Counterpetitioners, Ethan Kohnen and Jordan Aken, appeal from an order of the circuit court of McHenry County, ruling that petitioner Deborah Kohnen's spousal share of the estate of the decedent, Kevin John Kohnen, included real property located in Arizona. We reverse and remand for further proceedings.

¶ 2                          I. BACKGROUND

¶ 3    On March 7, 2023, Deborah filed a petition for letters of administration for Kevin's estate. The petition alleged that Kevin was Deborah's husband, that he resided in Illinois at the time of his death in September 2022, and that he left no will. On April 19, 2023, letters of office were issued appointing Deborah administrator of Kevin's estate. On June 14, 2023, Ethan and Jordan, Kevin's children, filed a petition seeking supervised administration of Kevin's estate. They alleged that Kevin's last will and testament was filed in the circuit court in January of that year, that it did

not name Deborah as executor, and that Deborah and Kevin were in the process of divorcing when Kevin died. The will left nothing to Deborah. The trial court granted the petition.

¶ 4    On July 24, 2023, Ethan and Jordan filed what was, in effect, a counterpetition for letters of administration. The counterpetition sought removal of Deborah as representative, alleging that she secured letters of office under false pretenses: to wit, that Kevin died intestate. On October 2, 2023, the trial court entered an order admitting Kevin's will to probate. On November 1, 2023, Deborah filed a petition to set aside the will on the basis that Kevin lacked testamentary capacity. On December 1, 2023, Deborah renounced the will. On December 7, 2023, the trial court revoked the letters of office issued to Deborah and appointed attorney Steven J. McArdle as administrator.

¶ 5    Because Deborah renounced Kevin's will, if the will was valid, she would be entitled to a one-third share of his estate under section 2-8(a) of the Probate Act of 1975 (Act) (755 ILCS 5/2-8(a) (West 2022)), which provides:

> "If a will is renounced by the testator's surviving spouse, whether or not the will contains any provision for the benefit of the surviving spouse, the surviving spouse is entitled to the following share of the testator's estate after payment of all just claims: ⅓ of the entire estate if the testator leaves a descendant or ½ of the entire estate if the testator leaves no descendant."

¶ 6    On January 3, 2025, Ethan and Jordan filed a motion seeking a declaration that Deborah's share of the estate under this provision did not include any portion of the proceeds from the sale of real property in Arizona that Kevin acquired before marrying Deborah. Following a hearing, the trial court ruled on Ethan and Jordan's motion as follows:

"[B]ased upon the vagueness of the claim in Arizona and what I see is my right to make a determination in Illinois, I will find that the motion ***. Regarding the Arizona property, I am going to find that that property will be probated in the State of Illinois, ***."

The court entered a written order denying the motion "for the reasons stated on the record." Ethan and Jordan filed a timely notice of appeal.

¶ 7                                                    II. ANALYSIS

¶ 8      We first consider whether we have jurisdiction. Although the trial court's ruling could have been clearer, there is no indication that the court reserved the question of whether the proceeds of the sale of the Arizona property would be included in Kevin's estate. Accordingly, we view the denial of Ethan's and Jordan's motion as a ruling on the merits of the parties' dispute over the distribution of the proceeds from the sale of the Arizona property. Thus, the court's order was appealable under Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016), which authorizes an appeal from "[a] judgment or order entered in the administration of an estate *** which finally determines a right or status of a party."

¶ 9      The question before us is whether, for purposes of section 2-8(a) of the Act, Kevin's real property in Arizona was part of his "entire estate." According to Ethan and Jordan, the answer is "no." We note that neither Deborah nor the administrator has filed an appellee's brief. Accordingly, our review is governed by *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976), which stated:

        "We do not feel that a court of review should be compelled to serve as an advocate for the appellee or that it should be required to search the record for the purpose of sustaining the judgment of the trial court. It may, however, if justice requires, do so. Also, it seems that if the record is simple and the claimed errors are such that the court can easily

decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal. In other cases, if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record the judgment of the trial court may be reversed."

Here, a decision on the merits would at least potentially require us to delve into another state's law of succession. We are hesitant to do so without the aid of an appellee's brief. Therefore, we consider only whether Ethan and Jordan have made a *prima facie* showing of reversible error.

¶ 10    Ethan and Jordan argue on appeal, as they did below, that, pursuant to *In re Estate of Pericles*, 266 Ill. App. 3d 1096 (1994), the Arizona property must be excluded from the calculation of Deborah's share under section 2-8(a) of the Act. In *Pericles*, the decedent, who was domiciled in Illinois, died owning real property in Georgia and Florida. *Id.* at 1098. After the decedent's wife renounced his will, the trial court ruled that the Florida and Georgia properties were not part of the decedent's "entire estate" and would thus be excluded from the calculation of his wife's share. *Id.* at 1099. The *Pericles* court explained that "the answer to whether the phrase 'entire estate' as used in section 2-8(a) of the Act includes a decedent's out-of-State real property *** lies in whether Illinois law is applicable to the administration of the decedent's nonresident realty." *Id.* at 1100. Addressing the question of what law governed administration of the Georgia and Florida property, the *Pericles* court reasoned as follows:

> "Courts in this State rely on the principles enumerated in the Restatement (Second) of Conflict of Laws in resolving conflict-of-laws questions. [Citation.] With regard to property, the Restatement (Second) of Conflict of Laws provides that ' "it is a firmly established principle that questions involving interests in immovables are governed by the law of the situs." ' [Citation.] The Restatement (Second) makes plain that the ' "term

'immovables' *** refers to land and to things that are so attached, or otherwise related, to the land as legally to be regarded a part of it." ' [Citation.] This principle is in agreement with the well-settled legal doctrine that the law of the State where the real estate is situated governs the rights of the parties. [Citation.]

   With regard to the subject matter at issue here, the Florida and Georgia properties of the decedent domiciled in Illinois, we find that Florida and Georgia law controls the administration of the respective realty located in those States. Therefore, when calculating respondent's statutory share upon renunciation of the decedent's will in Illinois, we find that the trial court did not err when it excluded the Florida and Georgia properties from the decedent's entire estate." *Id.* at 1101.

¶ 11   Applying the same reasoning here, Arizona law controls the administration of real property in that state and Kevin's real property there is not part of his "entire estate" for purposes of calculating Deborah's share under section 2-8. We note that, during the proceedings below, Deborah did not identify any authority contrary to *Pericles*. Nor have we found any. "It is fundamental in Illinois that the decisions of an appellate court are binding precedent on all circuit courts regardless of locale." (Internal quotation marks omitted.) *People v. Carpenter*, 228 Ill. 2d 250, 259 (2008). The trial court was not at liberty to depart from the holding of *Pericles*.

¶ 12   During the proceedings, Deborah did not dispute that administration of real property located in Arizona was governed by Arizona law. However, she argued as follows:

   "The question of whether or not to include the Arizona real property in the definition of 'entire estate' [citation], does not end with the determination that Arizona law controls the administration of the Arizona property. The Court must next examine Arizona Law to

determine whether or not the Arizona real property is to be included in [Deborah's] share upon reunification [*sic*] under Section 2-8(a) of the *** Act. [Citation]."

Deborah cited an Arizona statute providing that "[r]ights to homestead allowance, exempt property and family allowance for a decedent who is not domiciled in this state at the time of death are governed by the law of the decedent's domicile at death." Ariz. Rev. Stat. § 14-2401 (2025). However, it is far from clear that any of these rights include or encompass the right to a spousal share upon renunciation of a will. Deborah's argument below is insufficient to overcome Ethan's and Jordan's *prima facie* case for reversal based on *Pericles*.

¶ 13    Deborah also noted that Arizona law provides a "simplified procedure of allowing a foreign estate to administer real property located in Arizona without formally opening an ancillary probate in the state of Arizona." Under Arizona law, "[i]f local administration, application or petition is not pending" (*id.* § 14-4204), a personal representative appointed in probate proceedings in another state may, upon filing proof of authority in an Arizona court (*id.*), "exercise as to assets in [Arizona] all powers of a local personal representative and may maintain actions and proceedings in [Arizona]" (*id.* § 14-4205). Deborah argued that the "simplified procedure" is "evidence of Arizona's deference to the law of the decedent's domicile." We fail to see how affording an out-of-state personal representative the same powers as a local representative has any bearing on the choice of law applicable to the administration of real property located in Arizona.

¶ 14    In contrast, section 242 of the Restatement (Second) of Conflict of Laws explicitly addresses the question of what law applies in this situation:

"(1) The forced share interest of a surviving spouse in the land of the deceased spouse is determined by the law that would be applied by the courts of the situs.

(2) Whether a surviving spouse for whom provision has been made in the will of the deceased spouse may elect to take a forced share or dower interest in the land of the deceased spouse rather than to take under the will is determined by the law that would be applied by the courts of the situs.

(3) These courts would usually apply their own local law in determining such questions." Restatement (Second) of Conflict of Ls. § 242 (1971). For purposes of this section, " 'forced share' refers to the share, normally a specified percentage of the decedent's estate, which the surviving spouse has the right to claim against the provisions of the will." Restatement (Second) of Conflict of Ls. § 242 cmt. a (1971). It is undisputed that Arizona law does not provide a forced share and Deborah did not argue during the proceedings below that the law of any state other than Arizona would have applied in an Arizona court with respect to the Arizona property. Accordingly, Ethan and Jordan have made a *prima facie* showing that the Arizona property is not part of Kevin's "entire estate" for purposes of determining Deborah's share as a result of renouncing the will.

¶ 15                                        III. CONCLUSION

¶ 16    For the reasons stated, we reverse the judgment of the circuit court of McHenry County and remand for further proceedings.

¶ 17    Reversed and remanded.

*In re Estate of Kohnen*, 2026 IL App (2d) 250453

| Decision Under Review: | Appeal from the Circuit Court of McHenry County, No. 23-PR-84; the Hon. David R. Gervais, Judge, presiding. |
|---|---|
| **Attorneys for Appellant:** | Andrew Szocka, of Andrew Szocka, P.C., of Crystal Lake, for appellants. |
| **Attorneys for Appellee:** | No brief filed for appellee. |